# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 11 2012, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID S. HEALEY, )
)
    Appellant-Defendant, )
)
          vs. )    No. 02A04-1110-CR-537
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1109-FC-215

**June 11, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

David S. Healey appeals his conviction of three counts of Failure to Register as Offender,[1] all as class C felonies. Healey presents the following restated issues for review:

1. Did the trial court correctly deny Healey's motion to dismiss, based on his claim that the Indiana Sex Offender Registration Act (SORA), I.C. §§ 11-8-8-1 through 11-8-8-22 (West, Westlaw through legislation effective May 31, 2012) constitutes an *ex post facto* law in violation of the United States and Indiana Constitutions as applied to him?

2. Did the trial court abuse its discretion in sentencing Healey and impose an appropriate sentence?

We affirm and remand with instructions.

On July 7, 1995, Healey pleaded guilty to child molesting as a class C felony. He was sentenced to eight years imprisonment for this offense, with the sentence to be served consecutively to a sentence imposed for a conviction in a different county for receiving stolen auto parts. On July 21, 2009, Healey was charged with failure to register as offender in Cause No. 02D04-0907-FD-000688. He pleaded guilty and was sentenced to two years imprisonment.

The present failure-to-register-as-offender charges were initially filed on September 22, 2010 and involved allegations of failing to abide by Internet-use and reporting requirements.[2] A fourth charge under Count IV alleged that Healey, as a sex or violent offender under I.C. § 11-8-8-5 (West, Westlaw through legislation effective May 31, 2012), committed the sex offender internet offense of using a social networking website that allowed

---

[1]  Ind. Code Ann. § 11-8-8-17 (West, Westlaw through legislation effective May 31, 2012).
[2]  The amended charging information for Count I is representative of the nature of the alleged violations, *viz.*, "David S. Healey … did knowingly or intentionally make a material misstatement or omission while registering as a sex offender under 11-8-8-11; to wit: failed to notify the appropriate criminal justice institute and/or sheriff of *his social web site username*[.]"  *Appellant's Appendix* at 19 (emphasis supplied).  Counts II

2

persons less than eighteen years of age to access or use the website. On January 6, 2011, Healey filed a motion to dismiss the charges on grounds that subjecting him to the requirements of the sex offender registry statute constituted *ex post facto* legislation in violation of the federal and state constitutions. The trial court denied the motion to dismiss. A bench trial was held, for which the parties stipulated to the evidence, which consisted of State's Exhibits 1-5. Those exhibits included a detailed stipulation to the facts supporting the charges. The trial court found Healey guilty as charged.[3] The trial court sentenced Healey to the maximum eight years for each of the three failure-to-register offenses, and one year for the Internet offense, with all sentences to be served concurrently with one another, for a total executed sentence of eight years.

1.

Healey contends the trial court erred in denying his motion to dismiss, which was based on his claim that, as applied to him, SORA constitutes an *ex post facto* law in violation of the United States and Indiana Constitutions.

Article I, § 10 of the United States Constitution and article 1, § 24 of the Indiana Constitution prohibit the enactment of any law that "'imposes a punishment for an act which

---

and III were identical except for the highlighted portion, which in Counts II and III was replaced by two separate email addresses obtained by Healey.

[3] We note the appendix contains a copy of the October 3 judgment of conviction that states, in relevant part: "Defendant having entered plea of guilty pursuant to plea agreement, sentencing hearing is held." *Appellant's Appendix* at 51. This statement is at odds with the rest of the appellate record, including the September 16 Order or Judgment of the Court and the relevant notations on the Chronological Case Summary, and indeed the transcript of the trial and sentencing hearing, all of which indicate that Healey was found guilty following a bench trial. We remand this case with instructions to correct the judgment of conviction to reflect a conviction following a bench trial.

was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri,* 71 U.S. 277, 325–26 (1866)). "The underlying purpose of the *Ex Post Facto* Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Jensen v. State*, 905 N.E.2d 384, 389 (Ind. 2009). Healey contends that as applied to him, SORA violates both the Indiana and federal constitutional prohibitions against *ex post facto* laws.

We begin with Healey's claim under the United States Constitution. In *Smith v. Doe,* 538 U.S. 84 (2003), the United States Supreme Court determined that Alaska's sex registration statute, which is substantially similar to Indiana's, does not violate the Federal Constitution's *Ex Post Facto* Clause, *see Wallace v. State*, 905 N.E.2d 371, 374 (Ind. 2009), because it is "non-punitive and create[s] a civil regime." Healey contends that *Smith* and *Wallace* do not apply in his case because "[t]his is a case of first impression … following the Indiana Supreme Court decisions in *Wallace* and [*Jensen v. State*, 905 N.E.2d 384] as Mr. Healey falls directly between the originally codified version of the sex offender registry and the 1995 amendments requiring ten (10) years of registration." *Appellant's Brief* at 10. The dates to which Healey refers spanned from the enactment of SORA's registration requirement to the enactment of the 1995 amendments. Those amendments increased the length of time that offenders were required to register.

We conclude that the *Smith* rationale is broad enough to include challenges such as Healey presents in the present case. Pursuant to *Smith*, we hold that, as applied to Healey, the lengthened registering requirement under the 1995 amendment to SORA does not

contravene Article I, § 10 of the United States Constitution. *See also Jensen v. State*, 905 N.E.2d at 390 ("[i]n *Wallace* we noted that the United States Supreme Court has concluded that … Alaska's Sex Offender Registry Act, which is very similar to Indiana's Act, does not violate the Ex Post Facto Clause of the United States Constitution . . . [w]e thus proceeded to evaluate Wallace's claim under the Indiana Constitution").

Healey contends the 1995 amendment to SORA violates the Indiana Constitution's *ex post facto* prohibition as applied to him. Healey's 1995 conviction of the lesser-included offense of class C felony child molesting, with an offense date of September 20, 1994, subjected him to the sex offender registration requirements. The initial version of SORA took effect on July 1, 1994. Act of March 2, 1994, Pub.L. No. 11-1994, § 7 (codified as I.C §§ 5-2-12-1 - 5-2-12-13) (current version at I.C. §§ 11-8-8-1 to 11-8-8-22). Because this was prior to the time Healey committed his underlying sex-offender offense, the 1994 version of SORA was applicable and therefore did not pose an *ex post facto* problem. The 1994 version of SORA would have required Healey to register as a sex offender within seven days of arriving in the law enforcement jurisdiction where he intended to reside, and would have required him to continue to register until he was no longer on probation or had been discharged from parole.

Healey was released from parole on July 20, 2003. Had the 1994 version of SORA been in effect, Healey's duty to register would have expired on that day. In July 1995, however, an amendment took effect that extended the length of time that an offender was required to register – to ten years *after* the date the offender was released from prison, placed on parole, or placed on probation, whichever occurred last. *See* I.C. § 5-2-12-13 (1995)

5

(repealed by P.L. 140-2006, Sec. 41 and recodified under I.C. § 11-8-8-19). The 1995 amendment was therefore in effect at the time that Healey was discharged from parole on his qualifying offense. Healey contends that extending his reporting requirement by ten years under the 1995 version of SORA and using that extended requirement to charge him with failure to report in the present offense constitutes an *ex post facto* violation.

We evaluate *ex post facto* claims under the Indiana Constitution by applying the "intent-effects" test. *Jensen v. State*, 905 N.E.2d at 390. We must first determine whether the legislature meant the statute to establish civil proceedings. *Jensen v. State*, 905 N.E.2d 384. If the legislature intended to impose punishment, our inquiry is at an end because punishment results. *Id.* On the other hand, if we conclude the legislature intended a non-punitive regulatory scheme, we must further examine whether the scheme is nevertheless "so punitive in effect as to negate that intention thereby transforming what was intended as a civil regulatory scheme into a criminal penalty." *Id.* at *3*90.

Healey contends the 1995 amendments had a punitive effect because they increased by ten years the period of time an offender was required to register. Our Supreme Court has repeatedly declined to hold that the legislature intended the registration requirement in SORA as a criminal penalty. In so doing, the Court acknowledged that "it is difficult to determine any intent [with respect to SORA] given the lack of legislative history and purpose statement." *Lemmon v. Harris*, 949 N.E.2d 803, 810 (Ind. 2011). Moreover, our courts have repeatedly noted when considering *ex post facto* challenges to SORA that the burden of proving a statute unconstitutional is assigned to the party challenging a statute on that basis, because every statutes come before us "clothed with the presumption of constitutionality

6

until that presumption is clearly overcome by a contrary showing." *Jensen v. State*, 905 N.E.2d at 390. The Court has also noted that "the [overall] Act advances a legitimate regulatory purpose," namely, "public safety." *State v. Pollard*, 908 N.E.2d 1145, 1149 (Ind. 2009). For these reasons, the Court has assumed without deciding that "the legislature's intent was to create a civil, non-punitive, regulatory scheme." *Id*. at 1150. This has been the result even in response to a challenge to an amendment that resulted in an offender post-conviction reclassification as an SVP, which had the effect of converting his ten-year registration requirement into a lifetime-registration requirement. *See Lemmon v. Harris*, 949 N.E.2d 803 (discussing the 2007 amendment to SORA). Surely Healey's argument is no more compelling than that. Similarly, we assume without deciding that the 1995 amendment to SORA increasing the length of time of the registration requirement was intended as an amendment to a civil regulatory scheme. *See also, e.g., Spencer v. O'Connor*, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999) (registration "provisions evidence an intent to monitor the whereabouts of the offender, not to punish the offender"), *trans. denied*.

Having found no punitive intent on the part of the Legislature, we must now determine whether the effects of applying the regulatory scheme embodied in the 1995 Amendment is punitive as to Healey. In so doing, we assess the following factors, established by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963):

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as punishment, [3] whether it comes into play only on a finding of *scienter,* [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

7

*Lemmon v. Harris*, 949 N.E.2d at 810 (quoting *Wallace,* 905 N.E.2d at 379).

The first of the *Mendoza-Martinez* factors considers whether the sanction involves an affirmative disability or restraint. Our Supreme Court has observed that "through aggressive notification of their crimes, [SORA] exposes registrants to profound humiliation and community-wide ostracism", among other things. *Wallace v. State*, 905 N.E.2d at 380. Thus, the Court concluded, "[c]onsidered as a whole [SORA]'s registration and notification provisions impose substantial disabilities on registrants." *Id.* On the other hand, in *Jensen*, the defendant pleaded guilty to, among other things, vicarious sexual gratification under Ind. Code Ann. § 35-42-4-5 (West, Westlaw through legislation effective May 31, 2012). At the time the defendant pleaded guilty, SORA required that he register as a sex offender for a period of ten years following his release from prison and probation. In 2006, however, the Legislature amended SORA such that a defendant who committed an offense qualifying the defendant as a "sexually violent predator" under I.C. § 11-8-8-19 must register for life. Jensen was informed that pursuant to the amendment, he would now have to register for life. He appealed that determination ultimately to the Supreme Court, which noted that the "disabilit[ies] or restraint[s]" described in *Wallace* "applied to Jensen even before his offense qualified him as a sexually violent predator" and that "nothing mentioned above imposes any greater burden on Jensen or has any greater adverse affect now that he is required to register for a longer period." *Jensen v. State*, 905 N.E.2d at 391-92. Finally, however, the Court acknowledged that based upon the new status, he would be required to inform authorities of plans to travel from his principal place of residence for more than 72 hours and to re-register

8

for the rest of his life. Taken as a whole, the Court concluded that the restraints resulting from the amendment leaned "slightly in favor of treating the effects of the Act as punitive when applied to Jensen." *Id*. at 392.

The primary effect of the 1995 amendment was to extend by ten years the period of time that Healey was required to register. In *Jensen*, the Court noted the extension of the registration requirement from ten years to life, but, even when including the requirement to report travel plans, the Court concluded that the additional restraints leaned only slightly in favor of treating the effects as punitive. By comparison, we believe that increasing the registration requirement by ten years does not favor treating the effects of the 1995 amendment as punitive as applied to Healey.

The second factor involves a determination of whether the reporting requirement has historically been regarded as a punishment. Again, our Supreme Court has weighed in on this question and determined that it has. *See, e.g.*, *Wallace v. State*, 905 N.E.2d at 380-81 ("[a]side from the historical punishment of shaming, the fact that [SORA's] reporting provisions are comparable to supervised probation or parole standing alone supports a conclusion that the second *Mendoza–Martinez* factor favors treating the effects of the Act as punitive when applied in this case"). This factor favors treating the effects of the 1995 amendment as punitive as applied to Healey. *See also Jensen v. State*, 905 N.E.2d 384.

The third factor considers whether the 1995 amendment comes into play only on a finding of scienter. On this factor, our Supreme Court has stated, SORA "overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction. The few exceptions do not imply a non-punitive effect. We conclude that the third *Mendoza–Martinez*

9

factor slightly favors treating the effects of [SORA] as punitive when applied here." *Wallace v. State*, 905 N.E.2d at 381.

The fourth factor considers "'whether [the statute's] operation will promote the traditional aims of punishment—retribution and deterrence.'" *Jensen v. State*, 905 N.E.2d at 393 (quoting *Mendoza–Martinez,* 372 U.S. at 168). In applying this factor, we are mindful of the underlying assumption that if the statute in question promotes the traditional aims of punishment, it is more likely punitive than regulatory. *Jensen v. State*, 905 N.E.2d 384. The Court's explanation of its conclusion that the legislation extending Jensen's registration requirement from ten years to life was non-punitive as to him applies equally to application of the 1995 amendment to Healey, *i.e.*:

> There is no question that the Act's deterrent effect is substantial and that the Act promotes community condemnation of offenders—both of which are traditional aims of punishment. But this is so whether applied to an offender who is required to register for ten years or an offender required to register for life. Essentially, as to this factor Jensen is in no different position now than he was before the Act was amended in 2006.

*Id.* at 393. Therefore, the fourth factor favors treating the effects of the 1995 amendment as non-punitive when applied to Healey.

The fifth factor considers "'whether the behavior to which [the statute] applies is already a crime.'" *Id.* (quoting *Mendoza–Martinez,* 372 U.S. at 168). Again, we reach the same conclusion on this factor that the Supreme Court did in *Jensen*, and upon the same reasoning, *i.e.*:

> The fact that a statute applies only to behavior that is already and exclusively criminal supports a conclusion that its effects are punitive. There is no question that it is the determination of guilt for the offense of vicarious sexual gratification that triggered Jensen's lifetime registration requirement. This

10

seems to support the view that the effects of the statute are punitive. However, when Jensen pleaded guilty to this offense in January 2000 he also was required to register as a sex offender, albeit for ten years. In short, Jensen's behavior was criminal both before and after the 2006 amendment. With the exception of an extended period of registration, Jensen is in the exact position he was in when he pleaded guilty. We conclude the fifth *Mendoza–Martinez* factor favors treating the effects of the Act as non-punitive when applied to Jensen.

*Id.* (citation to authority omitted). Similarly, Healey's conviction of child molesting triggered his registration requirement. When he pleaded guilty, he was required to register as a sex offender, although the registration period ended sooner. Thus, his behavior was criminal both before and after the 1995 amendment. With the exception of an extended period of registration, Healey is in exactly the same position he was in when he pleaded guilty. *See Jensen v. State*, 905 N.E.2d 384. Accordingly, the fifth *Mendoza–Martinez* factor favors treating the effects of the 1995 amendment as non-punitive when applied to *Healey*.

The sixth factor considers whether "'an alternative purpose to which [the statute] may rationally be connected is assignable for it.'" *Id.* at 393 (quoting *Mendoza–Martinez,* 372 U.S. at 168–69). Restated, this asks whether SORA advances a legitimate regulatory purpose. *Jensen v. State*, 905 N.E.2d 384. The Supreme Court in *Jensen* answered this unequivocally in the affirmative. Therefore, the sixth *Mendoza–Martinez* factor also favors treating the effects of SORA as non-punitive when applied to Healey

The seventh and final factor considers "'whether [the Act] appears excessive in relation to the alternative purpose assigned.'" *Id*. at 393-94 (quoting *Mendoza–Martinez,* 372 U.S. at 169). As our Supreme Court noted in *Wallace*, "a number of courts give greatest

11

weight to this factor." *Wallace v. State*, 905 N.E.2d at 383. Although our Supreme Court described SORA's registration requirements as "broad and sweeping", *id*., they were in place and applied to Healey at the time of his guilty plea in July 1995. The only thing that changed with the enactment of the 1995 amendments was the extension of the registration period, which the Court held in *Jensen* did not render the amendment in that case punitive. Therefore, the seventh *Mendoza-Martinez* factor favors treating the effects of the 1995 amendment as non-punitive when applied to Healey.

Of the seven factors identified by *Mendoza–Martinez* as relevant to the inquiry of whether a statute has a punitive effect despite legislative intent that the statute be regulatory and non-punitive, only two lean in favor of treating the effects of the 1995 amendment as punitive when applied to Healey. The remaining factors lean in the opposite direction, even if slightly. Significantly, the seventh and perhaps most important *Mendoza–Martinez* factor, leans in favor of treating the amendment as non-punitive when applied to Healey. Therefore, we conclude that Healey has not carried his burden of demonstrating that as applied to him, the 1995 amendment violates the Indiana constitutional prohibition against *ex post facto* laws.

2.

Healey contends the trial court abused its discretion in sentencing him and imposed an inappropriate sentence. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. With the exception of our authority to review sentences under Ind. Appellate Rule 7(B), as long as a defendant's sentence is within the statutory range, it is reviewed only for an abuse

of discretion. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances and the reasonable inferences to be drawn therefrom. *Id.* Circumstances under which a trial court may be found to have abused its discretion include: (1) failing to enter a sentencing statement, (2) entering a sentencing statement that includes reasons not supported by the record, (3) entering a sentencing statement that omits reasons clearly supported by the record, or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* Where a trial court has identified proper aggravating and mitigating circumstances, however, "[t]he relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." *Id.* at 491.

When imposing a sentence for a felony, a trial court must enter a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing the sentence. *Anglemyer v. State,* 868 N.E.2d 482. A trial court abuses its discretion if its reasons and circumstances for imposing the sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State,* 877 N.E.2d 462 (Ind. 2007). If the statement includes a finding of aggravating and/or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances. *Anglemyer v. State,* 868 N.E.2d 482.

Finally, we note that the determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State,* 878 N.E.2d 269 (Ind. Ct. App. 2007), *trans. denied.* The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to

13

proffered mitigating factors as does a defendant. *Id.* A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. *Id.* An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. *Id.*

Healey first contends that the trial court erred in failing to find as a mitigator that he accepted responsibility for his actions, in that he "stipulated to all facts of the case and waived jury trial, sparing both significant time and expense for the State of Indiana." *Appellant's Brief* at 20. Although Healey did indeed admit to the underlying facts that supported the charges against him, this is not to say that he accepted responsibility for them. To accept responsibility for one's actions means more than merely admitting the deed, it also connotes a sense of accountability, a willingness to accept the legal consequences flowing from those actions. For this reason, the claim that accepting responsibility for criminal conduct should be considered a mitigating factor is overwhelmingly associated with a guilty plea, i.e., an admission of guilt and a willingness to be punished for that conduct. *See, e.g., id.* In the present case, Healey did not plead guilty to violating SORA, but merely admitted that he committed acts that would be in violation of SORA if he were subject to its registration requirement. In fact, he argued – and argues still – that he should not be subject to its provisions and thus should suffer no consequences. We do not mean to criticize his legal strategy in defending against these charges when we observe that his response to the charges against him falls short of the sort of personal accountability that would compel a finding that his admission of the underlying facts alone should be a mitigating consideration

14

at sentencing. The trial court did not abuse its discretion in this regard.

Healey next contends that the trial court abused its discretion in failing to find as a mitigator that he would benefit from a short period of incarceration or a term of probation. It is undoubtedly true that Healey himself would benefit from a short period of incarceration in the sense that it is his desire that his freedom be curtailed for as short a time as possible. It seems to us, however, that this mitigator is not a function of the individual defendant's wishes on this subject. Were it so, this would certainly be universally found as a mitigating circumstance. Rather, this mitigator is a reflection of the court's assessment of an individual defendant's prospects for living a productive life upon release from incarceration, including most notably an assessment of the risk for re-offending. In the present case, Healey has a long history of criminal and delinquent behavior and continues to pose a risk of re-offending, as evidenced by the facts in the present case, i.e., that under false pretenses, he solicited a minor on an internet site to pose for him. The trial court did not abuse its discretion in failing to find this as a mitigating factor.

Finally, Healey contends the trial court abused its discretion in refusing to find as a mitigator his history of substance abuse and efforts at rehabilitation. The record reveals that Healey began using alcohol when he was fifteen years old, and he continued to drink until the time of his incarceration for the present offense. He has smoked marijuana since he was nineteen, and has experimented with other illegal substances in his recent past. Much of this activity was illegal when he engaged in it. Indeed, this rationale may underpin the conclusion of some courts that substance abuse is actually an aggravating circumstance. *See Iddings v. State,* 772 N.E.2d 1006 (Ind. Ct. App. 2002), *trans. denied.* Be that as it may, we

15

can find no indication that his offenses were committed *because* he was then under the influence of alcohol or drugs. Also, we note Healey's claim that his history of substance abuse is mitigating because he has sought substance-abuse treatment in the past. This argument loses its force in light of the fact that the only mention of treatment programs at sentencing was his counsel's allusion to "a substance abuse class that Mr. Healey's been in while incarcerated at the Allen County Jail." *Transcript of Sentencing Hearing* at 5. Viewed as a whole, the trial court did not abuse its discretion in declining to find Healey's history of substance abuse as a significant mitigating circumstance.

Finally, Healey contends his sentence was inappropriate in light of his character and the nature of his offenses. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d at 1223. Healey bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

We begin by considering the nature of the offenses. The State concedes that Healey's offenses, *i.e.*, his failure to register as a sex offender and to report his computer social

16

website username, his email address, and the fact that he used a website program that could be accessed by persons less than eighteen "fall within the strictures provided by the registration law and therefore fall within the ambit of the advisory sentence." *Appellee's Brief* at 16.

We turn now to the character of the offender. As alluded to above, Healey has an extensive juvenile and criminal history. Beginning in 1987 and continuing almost unabated since then, he has accumulated seven prior misdemeanor convictions and seven prior felony convictions. Two true findings were entered against him in 1987 for committing acts that would constitute the crimes of criminal mischief and burglary if committed by an adult. He has been convicted of a total of seven misdemeanor offenses, including criminal conversion, two counts of resisting law enforcement, two counts of check deception, and two counts of criminal trespass. His felony offenses include a 1990 conviction for receiving stolen property, as well as another conviction for receiving stolen property incurred almost immediately after Healey was discharged from probation. He received yet another receiving-stolen-property conviction, this one in 1995 and occurring within five months of his being discharged from probation for the previous offense. He received the aforementioned child-molesting conviction in 1995, followed by a forgery conviction in 1997. Within eight months of being discharged from the Department of Correction, Healey was convicted of auto theft. Two months after being discharged from parole with respect to that offense, he pleaded guilty to a charge of failure to register as sex offender. The present offenses were committed within a month of Healey's release to parole. Healey has spent most of his adult life in prison or jail because he continues to reoffend when released from incarceration.

17

Probation and short terms of imprisonment have not altered his propensity to commit crimes. Moreover, given the nature of the most recent offenses and Healey's posing as a photographer and soliciting the participation of a minor via the Internet, he poses a substantial threat to the community. In summary, we conclude that his extensive criminal history, by itself, justified the sentence imposed by the trial court. Healey has failed to persuade us that his sentence is inappropriate.

Judgment affirmed and remanded with instructions.

MAY, J., and BARNES, J., concur.