## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2015, 10:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harlan T. Praul,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 11, 2015

Court of Appeals Case No.
71A03-1412-CR-422

Appeal from the St. Joseph Superior Court

The Honorable Roland W. Chamblee, Jr., Judge

Cause No. 71D08-1107-MR-008

**Friedlander, Judge.**

[1]     Harlan T. Praul appeals the sentence he received as a result of his plea of guilty to the offense of murder.  Praul presents the following restated issues for review:

1. Did the trial court abuse its discretion in its identification of mitigating circumstances?

2. Is Praul's sentence inappropriate in light of the offense and his character?

We affirm.

The facts are that in late May or early June 2011, Praul began dating Christine Freeman. On June 9 of that year, the two were drinking inside a home in South Bend, Indiana. After drinking seven or eight beers, Praul and Freeman began to argue about a previous relationship, and Praul struck Freeman in the face. Freeman attempted to leave and Praul followed her outside. When Freeman expressed a desire to call 911, Praul became enraged. He picked her up by the throat and threw her to the pavement, causing Freeman to lose consciousness. At that point, Praul tried to suffocate Freeman with an article of clothing and she stopped breathing. Praul stopped choking Freeman because he believed she was dead. When a subsequent gasp for air revealed that she was still alive, Praul began striking and kicking her in the head and body. Freeman coughed up a large amount of blood and began convulsing before she again stopped breathing. Once again believing that Freeman had died, Praul left the scene, walked to a nearby church, and called 911. He told the operator that he had killed Freeman and left her lying on the street.

Officers from the South Bend Police Department responded, arriving at the scene at 1:30 a.m. When they arrived, they observed Freeman lying on the ground. They detected no vital signs. The officers and paramedics who had arrived on the scene began life-saving efforts, after which Freeman began

breathing again. She was transported to Memorial Hospital. An examination revealed that Freeman had suffered multiple fractures to her face and ribs, and severe blunt-force trauma to her head and torso. Doctors performed an emergency tracheotomy to restore Freeman's breathing.

Officers found Praul sitting on the steps of the church. He waived his rights and confessed that he had tried to kill Freeman and that he had kicked and choked her. Praul was placed under arrest and initially charged with aggravated battery as a class B felony and attempted murder, as a class A felony.

After several weeks in the hospital, and despite around-the-clock care, Freeman died of her injuries on July 4, 2011. An autopsy revealed that she had died as a result of blunt-force injuries to her head and chest.

Following Freeman's death, the pending charges against Praul were dismissed, and he was charged with murder. On October 11, three weeks before the scheduled trial date, Praul pleaded guilty to murder without the benefit of a plea agreement. At the guilty plea hearing, Praul admitted that he knowingly "picked [Freeman] up by the throat and … slammed her to the ground." *Petitioner's Exhibit* 1 at 14. He also admitted that while Freeman was on the ground he "kicked her and the like" and that such resulted in her death. *Id.* The trial court sentenced Praul to sixty-five years imprisonment, which is the maximum sentence for murder.

1.

[8] Praul contends the trial court abused its discretion in failing to identify several mitigating circumstances. Specifically, Praul claims the trial court failed to find as mitigators: (1) the fact that he called 911 to report what he had done; (2) the fact that he confessed and accepted responsibility for his actions; (3) his history of mental illness; and (4) the fact that he pleaded guilty.

[9] The identification of mitigating circumstances at sentencing rests within the sound discretion of the trial court. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* at 491 (quoting *K.S. v. State,* 849 N.E.2d 538, 544 (Ind. 2006)). A trial court may abuse its sentencing discretion in several ways, including the failure to cite significant mitigating factors. *Anglemyer v. State,* 868 N.E.2d 482. To prevail on a claim pertaining to mitigators, a defendant must establish that the excluded mitigating circumstances are both significant and clearly supported by the record. *Id.* A sentencing court is not obligated to find a circumstance to be mitigating merely because it is advanced as such by the defendant, nor is it required to explain why it chose not to make a finding of mitigation. *Healey v. State,* 969 N.E.2d 607 (Ind. Ct. App. 2007), *trans. denied.* Also, a trial court does not abuse its discretion in failing to find a mitigating factor that is highly disputable in nature, weight, or significance. *Id.*

[10] There is no question that the trial court was aware of the facts that Praul contends should have been cited as mitigating circumstances. In fact, the court

stated that it had "gone back and forth between trying to figure out how much credit I give to you in terms of your having made that 911 call." *Petitioner's Exhibit 2* at 12. The court expressed similar deliberations with respect to Praul's claim of remorse and his plea of guilty. The court also stated that it took "into account" Praul's history of mental illness, which it explained "can cut both ways[.]" *Id.* at 13.

[11] The trial court's remarks could plausibly be interpreted as reflecting either that it found these facts to be mitigating but accorded them little weight, or that it declined to find them as mitigating at all. If it was the former meaning, we cannot review it. Under the current statutory sentencing scheme, the relative weight assigned to an aggravating or mitigating factor is not subject to review for an abuse of discretion. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008); *see also Anglemyer v. State*, 868 N.E.2d at 491 ("[b]ecause the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence, … a trial court cannot now be said to have abused its discretion in failing to 'properly weigh' such factors").[1]

[12] On the other hand, if we interpret the court's remarks as a rejection of these proffered mitigators, such would not constitute an abuse of discretion if they were highly disputable in nature, weight, or significance. *See Healey v. State,* 969 N.E.2d 607. In view of the brutality of the attack upon the victim, and the

---

[1] This principle applies as well to defeat Praul's claim that "the trial court failed to properly balance aggravating and mitigating circumstances". *Appellant's Brief* at 8.

benefit that Praul derived from his guilty plea (i.e., the State would forego filing a habitual offender enhancement), the trial court did not abuse its discretion in failing to cite these as mitigating factors, if indeed its statements may be interpreted as having declined to find them as such. The trial court did not abuse its discretion in the finding of mitigating circumstances.

2.

[13] Praul contends his sentence "should be revised under Indiana Appellate Rule 7(B) as inappropriate because the trial court failed to properly weigh mitigating circumstances." *Appellant's Brief* at 13. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State,* 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to App. R. 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State,* 895 N.E.2d 1219. Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State,* 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). In order to challenge a sentence on these grounds, however, it is incumbent upon a defendant to present arguments on both elements, i.e., character and the nature of the offense. *Gilliam v. State*, 901 N.E.2d 72 (Ind. Ct. App. 2009). Praul has not offered any argument concerning the nature of his offense and how that renders the maximum sentence inappropriate. Therefore, the argument is waived. Waiver notwithstanding, however, we proceed to review his claim.

[14] The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State,* 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State,* 989 N .E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Our Supreme Court has indicated that, when analyzing the appropriateness of a criminal sentence, there is "no right answer … in any given case." *Brown v. State,* 10 N.E.3d 1, 8 (Ind. 2014) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Rather, appellate review and, where appropriate, revision "ultimately boils down to the appellate court's 'collective sense of what is appropriate, not a product of a deductive reasoning process.'" *Id.* (quoting *Cardwell v. State,* 895 N.E.2d at 1225). Ultimately, we "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.*

[15] In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Praul was convicted of murder, for which the advisory sentence is fifty-five years,

which lies midway between the maximum (sixty-five) and minimum (forty-five) sentences for this offense. Praul received the maximum sentence.

[16] We next consider the nature of Praul's offense. "In considering the nature of the offense we recognize the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Fuller v. State,* 9 N.E.3d 653, 657 (Ind. 2014). The trial court imposed a sentence based upon its finding of aggravating and mitigating circumstances. We are not limited to those mitigators and aggravators, however, in analyzing a claim under App. R. 7(B). *Fuller v. State,* 9 N.E.3d 653.

[17] Praul murdered the woman with whom he had very recently begun a romantic relationship. The nature and circumstances of the murder are particularly brutal. After slamming Freeman to the ground, Praul strangled her until he thought he had killed her. When a subsequent gasp for air revealed that she was still alive, Praul commenced beating her and kicking her in the head and body with such violence that she began convulsing and coughing up a large amount of blood. It was the injuries sustained during the beating – a beating administered while Freeman was incapacitated from having been strangled almost to death – that ultimately were the cause of her death. We agree with the trial court's characterization of the facts and circumstances of this murder as "gruesome". *Petitioners Exhibit* at 12.

[18] Turning now to Praul's character, it is true that he pleaded guilty. The decision was likely a pragmatic one, however, in view of the strength of the evidence

against him and the benefit he received by pleading guilty. The record reveals that Praul has an extensive criminal history. Since 1992, Praul has been arrested approximately sixty-nine times in five different states. He has accumulated approximately eight previous felony convictions, eighteen misdemeanor convictions, and twenty-nine driving violations. At least nine of those previous convictions involved some type of threat to or assault upon others. Previous attempts at leniency have been unsuccessful, in that he has violated probation on at least three previous occasions and has been discharged from probation unsatisfactorily at least twice. Moreover, while jailed for the present offense, he committed another felony, i.e., threatening to kill a jail nurse. In view of the brutal nature of Freeman's murder and Praul's long-term pattern of criminal behavior, we are not persuaded that the sixty-five-year sentence imposed by the trial court is inappropriate.

[19] Judgment affirmed.

Baker, J., and Najam, J., concur.