## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Amanda Pearson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 6, 2016

Court of Appeals Case No.
09A05-1508-CR-1182

Appeal from the Cass Superior
Court

The Honorable Rick Maughmer,
Judge

Trial Court Cause No.
09D02-1206-FB-17

**Robb, Judge.**

# Case Summary and Issues

[1] Amanda Pearson entered a plea of guilty to burglary, a Class B felony, and was sentenced to 7,300 days of incarceration with 3,650 days suspended to probation. On appeal, Pearson raises two issues regarding her sentence: whether the trial court abused its discretion in sentencing her and whether her sentence is inappropriate in light of the nature of her offense and her character. The State cross-appeals, contending Pearson entered into a plea agreement waiving her right to appeal her sentence. Concluding Pearson waived her right to appeal her sentence, we affirm.

# Facts and Procedural History

[2] In 2012, Pearson was romantically involved and living with Jeremiah Kelley. Their relationship was volatile and marked by drug use. In April 2012, Kelley, his friend, Clifton Stone, and Pearson engaged in a series of residential burglaries in Carroll, Cass, Howard, and Tipton Counties. In particular, on April 4, 2012, the trio burglarized a home in Cass County. Pearson acted as lookout and remained in the car while Kelley and Stone entered the home and took a television and several items of jewelry. When making entry, they damaged the door from the garage into the house.

[3]     The State charged Pearson with burglary, a Class B felony, and theft, a Class D felony.[1]  On August 25, 2014, two days before a jury trial was scheduled to begin, Pearson and the State filed a written plea agreement which provided Pearson would plead guilty to burglary and the State would dismiss the theft count.  With regard to the sentence, the agreement provided there would be "[o]pen argument by the parties as to sentence," and restitution to the victims would be determined at sentencing.  Appellant's Appendix at 140.  As part of the plea agreement, Pearson acknowledged that she:

> (2) has been informed that by his plea he/she waives his/her rights to:
> * * *
> (e) Waiver of appellate review of this sentence imposed by the court.  Defendant acknowledges that he/she has discussed this matter with counsel, and hereby makes a knowing and voluntary waiver of appellate review of the sentence imposed by the trial court.  Defendant may appeal any illegal sentence which may be imposed.
> * * *
> (9)  The defendant hereby waives any right to challenge the trial court's finding on sentencing, including the balancing of mitigating and aggravating factors and further waives his right to have the Indiana Court of Appeals review his sentence under Indiana Appellate Rule 7(B).

*Id.* at 140-41.

---

[1] Pearson also faced charges for burglaries occurring in the other counties.

[4]     Also on August 25, 2014, the trial court held a plea hearing:

> [Court]: [W]e are here today because there was a plea agreement, proposed plea agreement filed in this cause of action. [Pearson is placed under oath.]
> * * *
> [Court]: It is my understanding you wish to enter a plea of guilty pursuant to a plea agreement that you have negotiated with the Prosecutor, is that correct?
> [Pearson]: Yes.
> * * *
> [Court]: I have before [me] here what purports to be a plea agreement with your signature on it. Did you sign this?
> [Pearson]: Yes, I did.
> [Court]: Did you read it before you signed it?
> [Pearson]: Yes, I did.
> [Court]: Did you discuss it with your Attorney . . . before you signed it?
> [Pearson]: Yes, we did.
> [Court]: I think it just simply says that your [sic] pleading guilty straight up to count one (1), the class B felony, six (6) to twenty (20) years, and a fine of nothing up to ten (10) thousand dollars, and the State is going to dismiss count two (2). Parties are free to argue in sentencing and if I do accept, the plea agreement there will be a no contact order with the alleged victims and restitution to be determined at the sentencing hearing. . . . Is that your agreement?
> [Pearson]: Yes.
> * * *
> [Court]: Hum, counsel is that the agreement . . .
> [State]: Yes.
> * * *
> [Defense Counsel]: Yes.

Appellee's App. at 3, 9-10. A factual basis was established and the trial court took the plea under advisement pending preparation of a pre-sentence

investigation report. A sentencing hearing was scheduled for October 13, 2014, but ultimately was not held until July of 2015.[2]

[5] The parties appeared in court for a sentencing hearing on July 14, 2015. The victims had not been properly notified of the date, so the trial court agreed to start the sentencing hearing but defer ruling so the victims could be notified of their right to be present and the State could present evidence regarding restitution at a later date. Pearson testified, as did several witnesses on her behalf. The court reconvened on July 23, 2015, at which time the victims appeared and gave testimony regarding their loss. At the conclusion of the hearing, the trial court sentenced Pearson to 7,300 days, all but 3,650 days suspended to probation, and ordered her to pay $23,928 in restitution. The trial court then stated,

> I need to advise you of your rights even though this was a plea agreement . . . . Do you understand that if you wish to take an appeal you must file a notice of appeal designating what is to be included in the record on appeal within thirty days after sentencing . . . ?
> [Pearson]: Yes, Your Honor.
> * * *
> [Court]: Now the rule says that I inquire of you whether or not you wish to appeal or file a motion to correct error. I don't know if you waived that in your plea agreement.
> [State]: There is no plea agreement, Judge, this was just an open . . .

---

[2] It appears Pearson's sentencing was delayed until after Kelley's case was resolved due to the possibility of her testifying in that case.

[Court]: Straight up sentence? No, there is an acknowledgement and waiver of rights filed August 25th. Let's just go ahead and say that it wasn't done. All right, do you wish to file an appeal or motion to correct error at this time? If you don't know, you can talk to counsel.

[Defense counsel]: She does, Judge.

Transcript, Volume 2, at 57-59. The trial court appointed counsel for Pearson and entered a sentencing order which indicated a plea agreement had been filed, a judgment of conviction for the crime of burglary, a Class B felony, was entered, and Pearson was sentenced to 7,300 days. *See* Appellant's App. at 179. In addition, the abstract of judgment prepared by the trial court shows Pearson was charged with burglary and theft, with the disposition being "plea by agreement" to burglary and dismissal of the theft charge. *See id.* at 181.

# Discussion and Decision

Pearson contends the trial court abused its discretion in sentencing her and that her sentence is inappropriate. The State argues that Pearson waived the right to appeal her sentence pursuant to her plea agreement. Given the nature of the State's argument, we address it first.

The State contends Pearson specifically agreed in her plea agreement not to appeal her sentence, except for an illegal sentence. As the trial court sentenced her within the terms of the plea agreement, and neither an abuse of discretion in sentencing nor an inappropriate sentence constitute an illegal sentence, the State urges this appeal be dismissed. Pearson acknowledges she signed a

document entitled "plea agreement" advising her that if the agreement was accepted by the trial court, she waived her right to appeal. Appellant's Brief at 12. She contends, however, that "the parties and the trial court all concede that Pearson entered a straight guilty plea and received no consideration for her plea agreement and, therefore, did not waive her right to appeal her sentence." *Id.* In support of this assertion, Pearson notes the trial court did not sign the plea agreement document and the State said at sentencing there was no plea agreement. In addition, Pearson interprets the trial court saying, "let's just go ahead and say it wasn't done" to mean that "a waiver of the right to appeal 'wasn't done' in this case." *Id.*

[8] In *Creech v. State,* 887 N.E.2d 73 (Ind. 2008), the defendant's plea agreement left his sentence to the trial court's discretion, and he agreed to waive his right to appeal the sentence so long as he was sentenced within the terms of his plea agreement. After the defendant had entered his plea of guilty and been sentenced, the trial court erroneously advised him that he had the right to appeal his sentence. Our supreme court held first that provisions waiving the right to appellate review of a sentence are enforceable as part of a written plea agreement. *Id.* at 75. The court further determined that after a defendant pleads guilty and receives the benefit of the plea bargain, subsequent actions by the trial court do not affect that waiver, recognizing that "[m]ost waivers are effective when set out in writing and signed." *Id.* at 76-77 (alteration in original) (quoting *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995), *superseded by statute on other grounds*). Therefore, the court held the trial court's

erroneous advisement at the conclusion of the sentencing hearing had no effect on an otherwise knowing, voluntary, and intelligent waiver of the right to appeal and was not grounds for allowing the defendant to circumvent the terms of his plea agreement. *Id.* at 76.

[9]     We have since addressed this issue in various iterations. In *Brattain v. State*, 891 N.E.2d 1055 (Ind. Ct. App. 2008), the trial court appointed appellate counsel for the defendant at his request more than a week after his sentencing hearing. We held, based on the reasoning in *Creech*, that this action did not invalidate the provision of the defendant's plea agreement waiving appellate review of his sentence. *Id.* at 1057. In *Ricci v. State*, 894 N.E.2d 1089 (Ind. Ct. App. 2008), *trans. denied*, the trial court advised the defendant *at his plea hearing* that according to its reading of the plea agreement, the defendant had not waived the right to appeal his sentence. Neither the State nor the defendant contradicted or corrected the trial court by drawing its attention to the waiver provision in the plea agreement. Therefore, we held the waiver provision was a nullity because "the trial court accepted the plea agreement, and [all parties] entered into the plea agreement with the understanding that [defendant] retained the right to appeal his sentence." *Id.* at 1094. And in *Mechling v. State*, 16 N.E.3d 1015 (Ind. Ct. App. 2014), *trans. denied*, we addressed the defendant's argument that the State was estopped from enforcing the waiver provision of a plea agreement because it did not correct the trial court when the trial court mistakenly advised him at his sentencing hearing that he had the right to appeal and offered to appoint appellate counsel. Because the trial court's misstatement

came at the conclusion of the sentencing hearing, we held the State had no duty "to object to a statement that carried no legal effect" and therefore application of estoppel was not warranted. *Id.* at 1017-18. We also noted that if there was a duty to correct the trial court, as officers of the court, the State and defense counsel would have an equal duty to do so. *Id.* at 1018.

[10] Thus, the timing of an advisement or action conflicting with the waiver provision of a plea agreement is the crucial factor in determining whether it effectively waived appeal rights. Here, the plea agreement was referenced repeatedly at the guilty plea hearing, and Pearson acknowledged having read and signed it. Unlike *Ricci*, Pearson's right to appeal was never mentioned at the guilty plea hearing, and therefore Pearson could not have proceeded with the understanding that provision of her plea agreement was void.[3] Instead, as in *Creech*, it was not until the conclusion of Pearson's sentencing hearing, after her plea had been accepted and her sentence imposed, that the trial court advised her an appeal must be initiated within thirty days and asked if she wished to appeal. It is difficult to know exactly what the trial court was referring to when it said, "Let's just go ahead and say that *it* wasn't done." Tr. Vol. 2 at 59 (emphasis added). However, as the trial court made that statement after accepting the plea agreement and sentencing Pearson, and as the trial

---

[3] A trial court is not required to inform a defendant of the right to appeal a sentence before accepting a guilty plea. *See* Ind. Code § 35-35-1-2. Nor is a trial court required to make an express finding about a defendant's intention to waive appellate rights. *Creech*, 887 N.E.2d at 77 ("Acceptance of the plea agreement containing the waiver provision is sufficient to indicate that, in the trial court's view, the defendant knowingly and voluntarily agreed to the waiver.").

court is bound by the terms of a plea agreement once it is accepted, Ind. Code § 35-35-3-3(e), whatever the trial court's intent, the statement had no legal effect on the terms of Pearson's plea.

[11] Finally, the fact the State represented at the conclusion of the sentencing hearing that there was no plea agreement is of no consequence. First, the trial court immediately corrected the State and referred to the written plea agreement filed in August 2014. Second, even if the trial court had not done so, it is important to note the timing of the State's representation: it came after sentence was imposed pursuant to the plea agreement and could not have had any effect on Pearson's decision to plead guilty or her understanding of the terms under which she was pleading guilty. And third, Pearson's counsel—who had advised her regarding the plea agreement, signed the agreement, and represented at the guilty plea hearing that the trial court had accurately represented the terms of the agreement between the State and Pearson—also had an obligation to speak up to correct any misstatements or misunderstandings about the course of the proceedings. *See Mechling*, 16 N.E.3d at 1018. The nearly one-year delay in sentencing Pearson after her plea agreement was filed may have contributed to the confusion at the conclusion of her sentencing hearing. As in *Creech*, we again "emphasize the importance of avoiding confusing remarks in a plea colloquy," 887 N.E.2d at 76, and remind trial courts they "would be well advised to determine whether such a [waiver] provision is part of any plea agreement that comes before them[,]" *Ricci*, 894

N.E.2d at 1093 n.7. The plea agreement was clearly part of the trial court's record and available for review before and during the sentencing hearing.

[12] Pearson argues she actually received no benefit from the plea agreement because the dismissed charge was a lesser-included offense and her sentence was left open to the trial court's discretion. It is likely the outcome would have been no different if Pearson had walked into court and said, "I plead guilty," without first having any conversations with the State and agreeing to waive rights over and above those inherently waived by a guilty plea. But the fact of the matter is, she *did* have conversations with the State and she *did* knowingly and voluntarily sign a plea agreement that included a provision allowing appellate review only of an illegal sentence. The trial court sentenced her within the terms of the plea agreement and within the statutory limits. *See* Ind. Code § 35-50-2-5. Pearson's sentence was not illegal and we therefore conclude Pearson has waived the issues raised in this appeal.

[13] Waiver notwithstanding, Pearson's challenge to her sentence fails on its merits. She contends the trial court abused its discretion in sentencing her by failing to find as mitigating circumstances that her involvement in the crime was less culpable than her co-defendants and that she was scared and simply following an abusive boyfriend. The finding of mitigating circumstances is within the discretion of the trial court, and to prove an abuse of that discretion, the defendant must show on appeal that the mitigating evidence is significant and clearly supported by the record. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied.* Pearson's testimony in support of her proffered

mitigating circumstances was equivocal. There was evidence of an abusive relationship with Kelley and that she felt pressured to assist in the crime. However, Pearson also testified that she was a "somewhat" willing participant in the burglaries, Tr. Vol. 1 at 25, and that the "biggest part" of why she helped was to get money for drugs, *id.* at 43. As to her involvement in the crime, she did not enter the house but stayed in the car to act as lookout and driver should they need to leave quickly. She was involved in a string of residential burglaries across multiple counties, so it was not a one-time event that caught her unaware. "A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance." *Healey*, 969 N.E.2d at 616.

[14] Finally, as to Pearson's claim that her twenty-year sentence is inappropriate, we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The principal role of appellate review is to "leaven the outliers, . . . not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Therefore, the question "is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007) (emphasis in original). This crime was committed as part of a series of similar crimes, and the damage and loss to the victims exceeded $20,000. Pearson has a criminal history dating back several years and a history of drug use which at

least in part prompted her participation in this crime. We may not have imposed the same sentence the trial court did, but the sentence is not inappropriate.

## Conclusion

[15] Pearson entered into a written plea agreement with a provision waiving her appellate rights. Although there was a confusing colloquy at her sentencing hearing, it occurred after her plea agreement was accepted and her sentence was imposed and thus, none of the statements, misstatements, or omissions had an effect on her decision to accept the plea agreement's terms. She has thus waived her right to appeal her sentence. In any event, her sentence was neither an abuse of discretion nor inappropriate. We therefore affirm the sentence.

[16] Affirmed.

Barnes, J., and Altice, J., concur.