## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 08 2016, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerald Edward Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 8, 2016 <br><br> Court of Appeals Case No. <br> 82A01-1605-CR-1088 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable David D. Kiely, Judge <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause No. <br> 82C01-1508-F5-4792 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Gerald Edward Johnson (Johnson), appeals his sentence following his open guilty plea to Count I, battery by means of a deadly weapon, a Level 5 felony, Ind. Code § 35-42-2-1(g)(2); Count II, intimidation, a Level 5 felony, I.C. § 35-45-2-4(a)(2);-(b)(2)(A); and his adjudication as a habitual offender, I.C. § 35-50-2-8.

[2] We affirm and remand.

## ISSUE

[3] Johnson raises one issue on appeal, which we restate as: Whether Johnson's sentence is appropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

[4] On August 8, 2015, Felicia Leachman (Leachman) attempted to end her relationship with Johnson because "she no longer wished to be with him." (Appellant's App. p. 9). The two argued and Johnson armed himself with a knife. When Johnson told Leachman that "he was going to kill her," Leachman responded, "[G]o ahead and do it." (Appellant's App. p. 9). Johnson attempted to stab her in the neck, but "Leachman was able to duck her head and was struck in the chin instead." (Appellant's App. p. 9). Leachman reached up and grabbed the blade of the knife as Johnson was trying to stab her again. As a result, she incurred a laceration to her palm and all around her hand, which required stitches. During her struggle to escape, Leachman

suffered a severe laceration to her knee, in which the tip of the knife broke off inside her leg. This injury required extensive surgery. After Leachman began screaming for help, neighbors came to her aid and started knocking on the apartment's door. At the time of the sentencing hearing, Leachman was still undergoing rehabilitation for the injuries inflicted by Johnson.

[5] On August 11, 2015, the State filed an Information, charging Johnson with Count I, battery by means of a deadly weapon, a Level 5 felony; and Count II, intimidation, a Level 5 felony. On October 7, 2015, the State amended the Charging Information by adding a habitual offender enhancement. Johnson's jury trial was held on March 9, 2016. Prior to the commencement of trial. Johnson pled guilty as charged without the benefit of a plea agreement.

[6] On May 26, 2016, the trial court conducted a sentencing hearing. At the hearing, the trial court articulated as mitigating circumstances the fact that Johnson entered a guilty plea without the benefit of a plea agreement and Johnson's health issues. The court found the following aggravators: Johnson's lengthy criminal history, which included eleven felony convictions, the severity of Leachman's injuries, and his parole status at the time of the current offense. The trial court sentenced Johnson to five years under each Count, with sentences to run concurrently to each other but consecutively to the five-year habitual offender enhancement to Count I. Johnson's aggregate sentence is ten years executed.

[7] Johnson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[8]     Johnson contends that his enhanced ten-year sentence is inappropriate in light of the nature of the offense and his character and requests the imposition of an aggregate sentence of six years executed. "[S]entencing is primarily a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 121 (Ind. 2015). Therefore, even where, as here, a trial court imposes a sentence that is authorized by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[9]     Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Nevertheless, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. On review, we focus on "the length of the aggregate sentence and how

it is to be served." *Id*. Johnson bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[10] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 5 offense, Johnson faced a sentencing range of one to six years, with the advisory sentence being three years. *See* I.C. § 35-50-2-6(b). Johnson's adjudication as an habitual offender added an additional two to six years to his sentence. *See* I.C. § 35-50-2-8(i)(2). Accordingly, the trial court sentenced Johnson to the upper range of the possible penalties.

[11] Turning to the nature of the offense, we find that this was a particularly brutal attack, resulting in numerous lacerations all over Leachman's body, some of which required extensive surgery. Particularly troubling is that Johnson initially aimed for her throat, but cut her chin instead. He sliced Leachman's palm, and the force with which he wielded the knife caused its tip to lodge into Leachman's knee. Undeterred, Johnson continued to attack until neighbors, who had been alerted by Leachman's screams, intervened and started knocking on the apartment door.

[12] With respect to his character, Johnson offers no examples of "substantial virtuous traits or persistent examples of good character." *Stephenson*, 29 N.E.3d at 121. First and foremost, the trial court referenced Johnson's extensive criminal history, which included eleven felony convictions. It is notable that

after being classified as a violent felon in 2008, Johnson continued to commit violent crimes, including intimidation and pointing a firearm at Leachman. Johnson's other convictions included, among others, possession of marijuana, burglary, theft, terroristic threatening, and carrying a concealed weapon. At the time of the current charges, Johnson was on parole. The trial court took "into consideration" that Johnson accepted responsibility and pled guilty without the benefit of a plea agreement as the court noted that "most likely otherwise" Johnson would have been sentenced to the maximum sentence. (Sent. Transcript p. 21). Although Johnson now complains that the trial court "did not bestow a significant benefit" on him for pleading guilty, a trial court is not obligated to give the same weight to mitigating circumstances that a defendant would. (Appellant's Br. p. 12); *See Healy v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. Moreover, the relative weight assigned by the trial court to mitigating circumstances is not subject to our review. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

[13] Likewise, Johnson complains that the trial court ignored his "profound" substance abuse problem. (Appellant's Br. p. 13). However, our review of the sentencing transcript reveals otherwise. During sentencing, the trial court noted that it recommended Johnson to "receive drug treatment while" at the Indiana Department of Correction as it would "be beneficial to" him. (Sent. Tr. p. 22). Again, the trial court's relative weight awarded to this circumstance is not open to our review. *See id*.

[14] Mindful of the brutal nature of the crime and Johnson's character, Johnson fails to persuade us of any virtuous traits or circumstances that would in any way justify a downward revision of his sentence.

[15] Nevertheless, at the request of both parties, we remand to the trial court for clarification of its sentencing order. The sentencing order indicates that the sentences for each Count are to run both concurrently and consecutively to each other. We agree that this is in error and contrary to the trial court's statement at the sentencing hearing where the trial court ordered Count I and II to run concurrent, with Count I enhanced by the habitual offender adjudication for an aggregate sentence of ten years executed.

## CONCLUSION

[16] Based on the foregoing, we hold that Johnson's sentence is not inappropriate in light of the nature of the offense and his character, but we remand to the trial court for clarification of the sentencing order.

[17] Affirmed and remanded.

[18] Crone, J. and Altice, J. concur