## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 17 2016, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery Wininger, | May 17, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 51A01-1509-CR-1375 |
| v. | Appeal from the Martin Circuit Court |
| State of Indiana, | The Honorable Lynne Ellis, |
| *Appellee-Plaintiff.* | Judge Trial Court Cause No. 51C01-1407-F5-93 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jeffery Wininger (Wininger), appeals his sentence following his conviction for operating a motor vehicle after forfeiture of license for life, a Level 5 felony, Ind. Code §§ 9-30-10-16; -17.

We affirm.

## ISSUES

Wininger raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by failing to consider several mitigating circumstances in its sentencing determination; and

(2) Whether Wininger's sentence is inappropriate in light of the nature of the offense and character of the offender.

## FACTS AND PROCEDURAL HISTORY

In 1990, 1994, and 1997, Wininger was charged with, and subsequently convicted of, operating while intoxicated. In 2005, Wininger pled guilty to being an habitual traffic violator (HTV). As a result, his driving privileges were suspended for life.

On January 21, 2012, the Orange County Sheriff's Department was dispatched to investigate a one-vehicle accident "on top of Mt Arie Hill" in Orange County, Indiana. (Appellant's App. p. 79). When the detective arrived, he observed a wrecked red pickup truck, but the driver had left the scene. A tow truck arrived to retrieve the truck, and the tow truck driver informed the

detective that he had been summoned by the pickup truck's owner—Wininger. When the detective contacted Wininger, Wininger initially stated that his girlfriend was driving the truck. However, Wininger eventually admitted that he had been driving the truck and lost control when he hit a patch of ice. He further explained that he left the scene and lied about the incident because he is an HTV and was operating without a driver's license. On January 26, 2012, an Information was filed in Orange County, Indiana, charging Wininger with operating a motor vehicle after forfeiture of license for life, a Class C felony, I.C. §§ 9-30-10-16; -17 (2011). On June 22, 2012, Wininger failed to appear in court, and an arrest warrant was issued. More than two years later, Wininger's warrant remained outstanding.

[6] On July 6, 2014, shortly after 5:00 p.m., a motorcycle was traveling west on U.S. 150 in Shoals, Martin County, Indiana, when it rounded a curve and lost control. The motorcycle crossed the center line and collided with a blue pickup truck. Although both the driver and passenger on the motorcycle sustained injuries, the driver of the truck fled the scene. The officers discovered that the pickup truck was registered to Wininger. A police officer located Wininger at his residence, and Wininger admitted that he had been driving the truck when the accident occurred, and he had left the scene "because he was afraid of going to jail and he knew he was suspended for life." (Tr. p. 14).

[7] On July 8, 2014, the State filed an Information, charging Wininger with operating a vehicle after forfeiture of license for life, a Level 5 felony. On April 16, 2015, Wininger entered into a plea agreement with the State, pursuant to

which Wininger agreed to plead guilty in exchange for a four-year cap on the executed term of his sentence. Subject to the four-year cap, sentencing was otherwise left to the trial court's discretion. The same day, the trial court held a change of plea hearing; the court took Wininger's guilty plea under advisement and ordered the Martin County Probation Department to prepare and file a Pre-Sentence Investigation (PSI) Report. On May 27, 2015, the probation officer informed the court that Wininger failed to schedule an appointment for his PSI interview as he was instructed. By July 15, 2015, Wininger had still not arranged to meet with a probation officer, so the State filed a motion to revoke his bond. The same day, the trial court granted the motion, and Wininger was arrested.

[8] On August 14, 2015, the trial court conducted a sentencing hearing. The trial court accepted Wininger's guilty plea and entered a judgment of conviction for operating a motor vehicle after forfeiture of license for life, a Level 5 felony. The trial court imposed a four-year sentence, with one year to be executed in the Indiana Department of Correction (DOC) and three years executed in Martin County Community Corrections.

[9] Wininger now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Abuse of Sentencing Discretion*

[10] Wininger claims that the trial court abused its discretion by failing to consider any mitigating circumstances in rendering a sentence. It is well settled that

"sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). It is an abuse of discretion if the trial court's "decision is clearly against the logic and effect of the facts and circumstances before the trial court." *Singh v. State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied*. We note that in this case, Wininger was sentenced pursuant to a plea agreement, which provided for a four-year cap on the executed portion of his sentence. "Where a plea agreement leaves sentencing to the trial court's discretion, a defendant is entitled to contest on direct appeal the merits of a trial court's sentencing decision. This includes a plea agreement wherein a defendant agrees to a sentencing cap or range." *Bowling v. State*, 960 N.E.2d 837, 841 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[11] In Indiana,

> trial courts are required to enter sentencing statements whenever imposing [a] sentence for a felony offense. . . . [T]he statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

*Anglemyer*, 868 N.E.2d at 490 (citations omitted). Our supreme court has elaborated that a trial court may abuse its discretion by

failing to enter a sentencing statement at all[,] . . . entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law.

*Id.* at 490-91. In such a situation, we will remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. "[O]nce the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" *Id.* (ellipsis in original) (quoting I.C. § 35-38-1-7.1(d)).

[12]     In the present case, the trial court made the following statement in imposing Wininger's sentence:

> I know what needs to be done with . . . Wininger and he needs to go to the DOC. I also know that he is a working man. I'm concerned because while he admitted he would never drive again he [is] still making an excuse for why he drove. I thought I was having a heart attack and needed to go to the hospital was one comment that he made that concerned me. The other one was I don't want to be a burden to my friends. I don't know that he doesn't get the fact he's going to be a burden to whomever he deals with for the rest of his life whenever he needs to get somewhere. That's a concern. That's the whole reason his son testified that he, you know, he keeps driving because he wants to

be independent. I'm going to, there was a four (4) year cap, I'm going to sentence him to the four (4) years at [DOC]. I'm going to have him serve one (1) year at the []DOC with the remaining three (3) years as a direct commitment to community corrections. I'm not going to do any probation. He has four (4) years. I'll be quite honest, . . . Wininger, I'll be real surprised if you make it in the first six (6) months. I, I don't know that you've got the concept that you can't ever drive again. . . . I don't care what the situation is. I still don't get I didn't dial 911. I . . . don't get that. But nobody has given me any information, uh, but you, you knew you shouldn't drive but you wanted to get to the hospital. So I think you need to set [sic] in the [DOC] for awhile and ponder on the fact that this is for real and this is for the rest of your life.

(Tr. pp. 80-81). Wininger does not challenge the adequacy of the trial court's sentencing statement. Rather, he simply contends that the trial court should have identified his "guilty plea, the undue hardship he will suffer from incarceration because of his health, his remorse[,] and his alcohol rehabilitation spanning nearly the past [twenty] years" as factors warranting mitigation of his sentence. (Appellant's Br. p. 10). We disagree.

[13]     The determination of mitigating circumstances is a matter left to the trial court's discretion. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. The trial court has no obligation "to accept the defendant's argument as to what constitutes a mitigating factor," nor is it "required to give the same weight to proffered mitigating factors as does a defendant." *Id.* "A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance." *Id.* Where a defendant asserts

that a trial court has abused its discretion by failing to identify a mitigating factor, on appeal, the defendant bears the burden of establishing "that the mitigating evidence is significant and clearly supported by the record." *Id.*

[14] Wininger asserts that the trial court should have found his "very poor health" to be a mitigating circumstance. (Appellant's Br. p. 9). Wininger's son testified that Wininger has "had three (3) heart attacks since June of 2014." (Tr. p. 69). Wininger's son also noted that Wininger is not eligible for "a defibrillator" because his heart is only functioning at 35%, rather than the requisite 50%; thus, "he's at high risk . . . for death." (Tr. pp. 68-69). At the sentencing hearing, Wininger's attorney argued simply that "[h]is health is that serious that he . . . deserves leniency for that reason alone." (Tr. p. 79). On appeal, Wininger offers no argument as to why his poor health should be considered a factor in mitigation. During the sentencing hearing, Wininger's son testified that he had been providing Wininger's medication to the jail during Wininger's incarceration, and there was no indication that Wininger would not receive necessary treatment if sentenced to the DOC. *See Henderson v. State*, 848 N.E.2d 341, 345 (Ind. Ct. App. 2006) (concluding the trial court did not err in failing to identify the defendant's poor health as a mitigating circumstance where no evidence was presented that the defendant's "medical conditions would be untreatable during incarceration or would render incarceration a hardship").

[15] Wininger also cites his guilty plea and remorse as factors that the trial court should have considered in mitigation. In general, a guilty plea deserves some consideration as a mitigating circumstance. *Caraway v. State*, 959 N.E.2d 847,

853 (Ind. Ct. App. 2011), *trans. denied*. However, a guilty plea loses its mitigating significance "if the circumstances indicate [that] the defendant is not taking responsibility for his actions, or if substantial admissible evidence exists against the defendant. Also, the plea may not be significant 'when the defendant receives a substantial benefit in return for the plea.'" *Id.* (citation omitted) (quoting *Anglemyer*, 875 N.E.2d at 221). In this case, Wininger received the benefit of a capped sentence. A Level 5 felony carries a maximum sentence of six years, but the executed portion of Wininger's term would not exceed four years under the plea deal. *See* I.C. § 35-50-2-6(b). Moreover, given the fact that Wininger admitted to the police officers that he had been driving his pickup truck at the time of the accident, the State's case against him was strong; thus, Wininger's decision to plead guilty was "merely a pragmatic one." *Lavoie v. State*, 903 N.E.2d 135, 143 (Ind. Ct. App. 2009).

[16] Additionally, with respect to Wininger's expression of remorse, Wininger concedes that the trial court "seemed to doubt [his] sincerity." (Appellant's Br. p. 10). During the sentencing hearing, Wininger stated that he knew "what [he] did was wrong." (Tr. p. 72). However, he offered numerous, *inconsistent* excuses in an attempt to justify his illegal conduct. First, when the police officers arrived at his house to question him about the accident, Wininger stated that he left the scene out of fear that he would be arrested based on his HTV status. Then, during his PSI interview, Wininger informed the probation officer that he drove because "he believed he was having a heart attack" and did not have a working phone to call for help. (Appellant's Conf. App. p. 125). In his

written version of events for the PSI, Wininger described that on the day of the accident, he was experiencing chest pain, did not have medication at his house, and could not get a hold of his son to drive him to the hospital. Yet, in the same report, Wininger claimed that, after the accident, he "asked one of the motorcycle group" to take him to his house "to get some medication to stop my heart from beating so fast." (Appellant's Conf. App. p. 129). Lastly, Wininger made a statement at the sentencing hearing: "I was thinking I was having a heart attack when I left my house. . . . And, uh, once [the accident] happened and I, I went to the house to get some medication and I went to get a bar to get my truck so they wouldn't tow it away. . . . I promise I will never drive again in my life." (Tr. p. 72). Accordingly, we find no abuse of discretion in the trial court's rejection of Wininger's guilty plea and remorse as mitigating circumstances.

[17] Finally, we find that Wininger's argument regarding his alcohol rehabilitation is precluded from appellate review. Although Wininger's son stated at the sentencing hearing that Wininger "hasn't drink [sic] a drop since 1999[,]" Wininger did not proffer his "[twenty] years" of alcohol rehabilitation as a mitigating circumstance for the trial court to consider. (Tr. p. 70). "If the defendant does not advance a factor to be mitigating at sentencing, this [c]ourt will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Hollin v. State*, 877 N.E.2d 462, 465 (Ind. 2007) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000)).

## II. *Appropriateness of Sentence*

[18] Wininger also claims that his sentence is inappropriate. A Level 5 felony is punishable by a "term of between one (1) and six (6) years, with the advisory sentence being three (3) years." I.C. § 35-50-2-6(b). Here, Wininger received a four-year sentence, which is well within the statutory range and is the maximum term agreed upon under his plea agreement. Even where the trial court acts within its lawful discretion in fashioning a sentence, our court may revise the sentence "if, after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[19] It is well established that "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We are mindful that "we must and should exercise deference to a trial court's sentencing decision, both because [Appellate] Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Hunt v. State*, 43 N.E.3d 588, 590 (Ind. Ct. App. 2015), *trans. denied*. On review, we focus on "the length of the aggregate sentence and how it is to be served." *Cardwell*, 895 N.E.2d at 1224. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage

done to others, and myriad other factors that come to light in a given case." *Id.* Our court does "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Wininger, who bears the burden of proving that his sentence is inappropriate, simply argues that "[t]he numerous mitigators [discussed above] support" a reduced sentence. *Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012); (Appellant's Br. p. 12).

[20] We first consider the nature of the offense. Wininger, whose driver's license has been suspended since 2005, was involved in an accident while he was driving his pickup truck. Due to his HTV status, Wininger left the scene before police arrived. It is undisputed that it was the motorcycle driver who caused the accident, but when Wininger fled the scene, he left two injured people behind—one of whom had suffered a compound fracture—because he did not want to get arrested.

[21] As to his character, the record establishes that Wininger served in the United States Navy and received an honorable discharge in 1973. In addition, Wininger has a steady employment history, and Wininger's son lauded Wininger's work ethic during the sentencing hearing. Nevertheless, Wininger's criminal history demonstrates his unwillingness to conform to the laws of our society. Wininger's criminal history, while certainly not the worst this court has seen, consists of multiple alcohol and driving related offenses. Specifically, his record contains four convictions for operating while intoxicated and one

HTV conviction. Furthermore, at the time he committed the instant offense, Wininger had a two-year-old outstanding warrant in Orange County after he failed to appear on a charge of operating a motor vehicle after forfeiture of license for life in an incident nearly identical to the present case. For his prior offenses, Wininger received suspended sentences, probation, community service, and home detention. It is evident that the trial court's past leniency was insufficient to deter Wininger from committing additional crimes. Thus, a DOC sentence is now necessary to ensure that Wininger respects the fact that, regardless of the circumstances, he is prohibited from operating a vehicle. We therefore find that Wininger's sentence is not inappropriate and affirm the trial court's four-year term.

## CONCLUSION

[22] Based on the foregoing, we conclude that the trial court acted within its discretion in declining to find any mitigating circumstances, and we further conclude that Wininger's sentence is not inappropriate.

[23] Affirmed.

[24] Kirsch, J. and Pyle, J. concur