

**FILED**

Aug 20 2015, 8:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Dylan A. Vigh
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Pardip Singh,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 20, 2015

Court of Appeals Case No.
49A02-1410-CR-00717

Appeal from the Marion Superior
Court

The Honorable Sheila A. Carlisle,
Judge

Trial Court Cause No.
49G03-1208-FB-056991

**Mathias, Judge.**

[1] Following a jury trial, Pardip Singh ("Singh") was convicted of Class B felony attempted promotion of human trafficking, Class C felony criminal confinement, and Class D felony intimidation. He received an aggregate sentence of fifteen years. Singh appeals and raises the following three issues, which we restate as:

1. Whether sufficient evidence supports Singh's conviction for attempted promotion of human trafficking;

2. Whether Singh's convictions for attempted promotion of human trafficking and criminal confinement are barred on double jeopardy principles; and

3. Whether the trial court abused its sentencing discretion in finding certain aggravating factors.

We affirm.

## Facts and Procedural History

Singh and P.K. were paired by a matchmaker and married in March 2006. At the time, P.K. was living in India and studying nursing. For the following six years, Singh lived in the United States and occasionally visited P.K., who was still living in India. In February 2012, P.K. moved to the United States to live with Singh and his parents in New Jersey. She had no other family in the country except for an uncle in California, no job, and spoke little English. At some point while they were living in New Jersey, Singh began to beat P.K. and prohibited her from contacting her family in India.

Singh and P.K. moved to Indiana in May 2012, shortly after Singh began working as a commercial truck driver. On May 7, 2012, Singh's father drove P.K. to Ohio, where they met Singh. For the next four days, Singh and P.K. drove throughout Ohio, Pennsylvania, and New York before arriving in Indianapolis. During this time, Singh forced P.K. to remain in the back of the cab of his semi-truck and gave her only cookies and water to eat and drink.

When P.K. had to use the restroom, Singh followed her and warned her that he would kill her if she spoke to anyone.

[5] On May 12, 2012, soon after Singh and P.K. reached the apartment Singh and his father had leased in Indianapolis, Singh called P.K.'s father and told him that Singh was going to kill P.K. He also called P.K.'s uncle, who lived in California, and demanded that he be paid the equivalent of roughly $64,000, or he would kill P.K. After beating P.K., Singh made three more phone calls, during which P.K. heard Singh say that he had "a girl from India" and that he would "take $500 for one night for her." Tr. p. 244. Singh left the apartment shortly thereafter, telling P.K. that he would kill her if she left the apartment.

[6] When Singh returned later, he was accompanied by an unidentified male. P.K., who was in another room, heard Singh say "500" to the man. Tr. p. 246. She refused to come out of the room when Singh called her. Singh dragged her by the hair out of the room and, when she refused to go with the man, began to beat her. The man fled, and Singh continued to beat P.K., eventually pushing her down the stairs of their second-story apartment. She landed at the bottom of the stairs, near the apartment complex's mailboxes. Singh then grabbed her and pounded her head against the metal mailboxes. At some point during the beating, Singh's cell phone rang and he stopped the attack long enough to answer it. P.K. took the opportunity to flee upstairs to the apartment, where she locked Singh out.

[7] Singh called the police from outside the apartment. When Officer Robert Robinson ("Officer Robinson") of the Indianapolis Metropolitan Police Department arrived, Singh asked for the officer's help in re-entering his apartment. Officer Robinson knocked on the apartment door and announced his presence. When P.K. opened the door, Officer Robinson observed that she was "visibly upset," shaking, crying, and had a "red abrasion" on her forehead. Tr. pp. 210-11. She pleaded for the officer's help, crying "[h]e hurt me. He won't let me go." *Id.* After speaking with P.K., Officer Robinson arrested Singh.

[8] On August 17, 2012, the State charged Singh with Class B felony promotion of human trafficking, Class C felony criminal confinement, Class D felony intimidation, Class D felony criminal confinement, Class A misdemeanor domestic battery, and Class A misdemeanor battery. After Singh's counsel filed a notice indicating that Singh was mentally incompetent to stand trial, the trial court appointed two physicians to evaluate Singh's competency. On August 29, 2013, with the consent of both parties, the trial court issued an order committing Singh to the Division of Mental Health and Addiction in order to "provide competency restoration services" for Singh. Appellant's App. pp. 38-39.

[9] On March 6, 2014, the Logansport State Hospital notified the trial court that Singh had been determined to be competent to stand trial. Singh's jury trial was held on August 18, 2014. The jury found Singh guilty of five of the six counts, acquitting him of Class D felony criminal confinement.

[10] A sentencing hearing was held a month later, on September 18, 2014. The trial court vacated Singh's domestic battery and battery convictions on double jeopardy grounds. After hearing evidence from both parties, the trial court found as mitigating that the present offense was Singh's first felony conviction, the possibility that Singh's conduct could be related to a mental health problem, and the fact that Singh "in the future will be able to find a job and be employed." Tr. pp. 448-49. It found as aggravating that Singh was in a position of trust with respect to his wife since she had no nearby family, no job, was new to the country, spoke little English, and was dependent on Singh; that Singh violated the terms of his pre-trial release; and that Singh had prior arrests for domestic violence and a previous assault conviction.

[11] The trial court concluded that the aggravating factors outweighed the mitigating factors and sentenced Singh to fourteen years for attempted promotion of human trafficking, four years for criminal confinement, and 545 days for intimidation. The court ordered Singh's human trafficking and confinement sentences to be served consecutively, with three years suspended to probation, and the intimidation sentence to be served concurrently to the other sentences, for an aggregate executed sentence of fifteen years.

[12] Singh now appeals.

## I. Sufficiency

[13] Singh first argues that the evidence is insufficient to sustain his conviction for attempted promotion of human trafficking. When reviewing the sufficiency of

the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if substantial evidence of probative value exists such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[14] Indiana Code section 35-42-3.5-1(a) provides that:

> A person who, by force, threat of force, or fraud, knowingly or intentionally recruits, harbors, or transports another person:
>> (1) to engage the other person in:
>>> (A) forced labor; or
>>> (B) involuntary servitude; or
>> (2) to force the other person into:
>>> (A) marriage;
>>> (B) prostitution; or
>>> (C) participating in sexual conduct (as defined by IC 35-42-4-4);
>
> commits promotion of human trafficking, a [Class B] felony.

[15] Under the attempt statute, the offense of attempted promotion of human trafficking is complete when, "acting with the culpability required for commission of the crime, [a person] engages in conduct that constitutes a substantial step toward commission of the crime." I.C. § 35-41-5-1.

[16] Singh claims that "the evidence is insufficient in showing beyond a reasonable doubt that when Singh transported P.K. in his truck, he did so with the requisite knowledge that he would be forcing P.K. to perform commercial sex acts upon arriving in Indiana." Appellant's Br. at 7. He claims no evidence exists of a "scheme whereby he intended to force P.K. into commercial sex for any time prior to the May 12, 2012 incident" or that he "engaged in comparable behavior with P.K. prior to May 12, 2012." *Id*. at 8.

[17] Singh's argument presumes that, in order to convict him of attempted promotion of human trafficking, the State had to prove that he had the intent to force P.K. into prostitution during the time he was transporting her to Indiana. We note, however, that the statute criminalizes transportation, recruitment *or* harboring a person in order to force them into marriage, prostitution, or participating in sexual conduct. The State presented evidence that, on May 12, 2012, Singh beat P.K. and told her that he would kill her if she left his apartment. During the time P.K. remained in Singh's apartment under threats against her life, Singh made phone calls soliciting money from other men in exchange for "one night" with P.K., brought one man to the apartment apparently for the purpose of trading sex with P.K. for five hundred dollars, and beat P.K. when she refused to go with the man. This evidence is sufficient to prove that Singh harbored P.K. in his apartment to force her into prostitution or sexual conduct.

[18] Under these facts and circumstances, the State presented sufficient evidence to establish that Singh knowingly or intentionally took a substantial step towards

using threats and force to harbor P.K. in an apartment and force her into prostitution or participating in sexual conduct.

## II. Double Jeopardy

Singh next argues that his convictions for attempted promotion of human trafficking and criminal confinement violate Indiana's prohibition against double jeopardy under the actual-evidence test.

The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. A trial court's legal conclusion regarding whether convictions and sentences violate double jeopardy principles is reviewed de novo. *Sloan v. State,* 947 N.E.2d 917, 920 (Ind. 2011). We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our supreme court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). In *Richardson,* our supreme court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original).

Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish *all* of the essential elements of a second challenged offense. *Richardson,* 717 N.E.2d at 53.

> "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State,* 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id.* The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* at 1236.

*Bunch v. State,* 937 N.E.2d 839, 845-46 (Ind. Ct. App. 2010), *trans. denied.*

[22] Singh was charged with promotion of human trafficking as follows: "Pardip Singh, on or about May 12, 2012, did knowingly harbor and/or transport another person: that is, [P.K.], by force and/or threat of force and/or fraud to force [P.K.] into prostitution[.]" Appellant's App. p. 26. Singh was charged with Class C felony criminal confinement as follows: "Pardip Singh, on or about and between May 7, 2012 and May 11, 2012 did knowingly confine another person: that is, [P.K.], without [P.K.'s] consent and the confinement was committed by using a vehicle[.]" *Id.* at 27.

[23] Singh argues that the evidence used to establish his conviction for attempted promotion of human trafficking was the same as that used to establish criminal confinement. Specifically, he argues that "there was no evidence, and the State did not specifically argue, that Singh 'harbored' P.K." and that the jury used the same evidence—that Singh forcibly transported P.K. to Indiana under a threat of violence—to conclude that he was guilty of attempted promotion of human trafficking and of criminal confinement. Appellant's Br. at 12.

[24] The charging information for promotion of human trafficking alleged that, on May 12, 2012, Singh transported or harbored P.K. and attempted to sell her as a prostitute. The charging information for criminal confinement alleged that from May 7, 2012 to May 11, 2012, Singh confined P.K. in the back of his truck cab and threatened to kill her if she tried to escape or get help.

[25] In support of the promotion of human trafficking charge, the State presented evidence that Singh kept P.K. in his apartment, made phone calls from the apartment soliciting sexual contact with P.K. for $500 per night, repeated the offer to an unidentified male who arrived at the apartment later that evening, dragged P.K. by the hair into the room where the man was waiting, and beat P.K. when she refused to go with the man. The jury was instructed that the substantial step Singh took towards promotion of human trafficking was the multiple solicitations he made from his apartment on May 12, 2012, offering sexual contact with P.K. for a price of five hundred dollars. Tr. pp. 203, 372-73.

[26] The evidence the State presented in support of the criminal confinement charge revealed that Singh drove P.K. to Indiana in his semi-truck cab over the course of four days, from May 7, 2012, to May 11, 2012, and during this time, he kept her locked in the truck unless he was with her, followed her to the bathroom, and told her he would kill her if she called for help.

[27] Considering the evidence presented, we find no reasonable probability that the evidence used to establish the essential elements of attempted promotion of human trafficking were also used to establish the essential elements of Class C

felony criminal confinement. Therefore, under the actual evidence test, Singh's convictions for attempted promotion of human trafficking and criminal confinement are not the same offense, and his convictions do not violate the Double Jeopardy Clause of the Indiana Constitution.

## III.    Sentencing

[28]    Finally, Singh claims that the trial court abused its discretion in sentencing him. Generally speaking, sentencing decisions are left to the sound discretion of the trial court, and we review the trial court's decision only for an abuse of this discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* The trial court may abuse its sentencing discretion in a number of ways, including: (1) wholly failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law. *Kimbrough v. State,* 979 N.E.2d 625, 628 (Ind. 2012) (citing *Anglemyer,* 868 N.E.2d at 490-91).

[29]    Singh contends that the trial court abused its discretion when it considered his prior arrests as aggravating factors when sentencing him. Citing *Monegan v. State,* 756 N.E.2d 499, 502-03 (Ind. 2001), he claims that, unlike the trial court

in *Monegan*,[1] the trial court here failed to make any statement indicating that Singh's prior arrests demonstrated a pattern of antisocial behavior. He also argues that the trial court "erred when it found [his 2004 assault] conviction as an aggravating factor, because its importance is only marginally significant in considering Singh's sentence for a class B felony." Appellant's Br. at 15.

[30] Contrary to Singh's argument, however, a trial court has no requirement to find a certain pattern of behavior demonstrated by prior arrests before it may consider those arrests as aggravating factors at sentencing. Trial judges are permitted to examine specific activities of the defendant at sentencing, where no presumption of innocence exists, to "give the judge a feel for the kind of person defendant is through a thorough examination of his background." *McNew v. State*, 271 Ind. 214, 221, 391 N.E.2d 607, 612 (1979).

[31] Here, the trial court noted Singh's three prior arrests, all for domestic violence-related incidents, his 2004 assault conviction, and the fact that he violated the terms of his pre-trial release for the present offense. It expressed concern that he would engage in further acts of domestic violence in the future and noted his apparent lack of respect for the law. This was well within the court's discretion, especially given the nature of Singh's present offenses. *See Mitchell v. State,* 844 N.E.2d 88, 91 (Ind. 2006) (citing *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) (fact of prior convictions may always be used in consideration of

---

[1] In *Monegan*, our supreme court held that a sentencing court's consideration of a defendant's record of prior arrests as an aggravating factor does not violate due process because such a record reveals that subsequent antisocial behavior has not been deterred by the police authority of the State.

defendant's sentence)); *Patterson v. State*, 846 N.E.2d 723 (Ind. Ct. App. 2006) (the trial court's failure to consider defendant's lack of prior convictions as a mitigating factor during sentencing for robbery resulting in serious bodily injury was not an abuse of discretion; the court determined that defendant's arrest record supported the finding that the risk that defendant would commit another crime was an aggravating circumstance).

[32] We therefore conclude that the trial court did not abuse its discretion in sentencing Singh.

## Conclusion

[33] For all of these reasons, we conclude that the State presented sufficient evidence to support Singh's conviction for attempted promotion of human trafficking. We also conclude that none of Singh's convictions are barred on double jeopardy grounds under the actual evidence test and that the trial court did not abuse its discretion in sentencing Singh.

[34] Affirmed.

May, J., and Robb, J., concur.