## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 05 2016, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Kesterke,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 5, 2016<br><br>Court of Appeals Case No.<br>02A04-1510-CR-1830<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Frances C. Gull, Judge<br><br>The Honorable Robert Ross, Magistrate<br><br>Trial Court Cause No.<br>02D05-1412-CM-5047 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert C. Kesterke (Kesterke), appeals his convictions for criminal trespass, a Class A misdemeanor, Ind. Code § 35-43-2-2(a)(4) (2014); and conversion, a Class A misdemeanor, I.C. § 35-43-4-3(a).

We affirm.

## ISSUE

Kesterke raises one issue on appeal, which we restate as follows: Whether his convictions for criminal trespass and conversion violate the Indiana Constitution's prohibition against double jeopardy.

## FACTS AND PROCEDURAL HISTORY

In December 2014, Martin Enterprises (Martin), also known as Martin Construction, had contracted with the City of Fort Wayne to demolish a school building at 1903 St. Mary's Avenue and replace it with a park. The contract provided Martin with "salvage rights"—ownership of the debris resulting from demolition. (Transcript p. 111). Before starting the project, Martin erected a six-foot, chain-link fence around the work site. Martin also posted "clearly legible" signs that read, "Keep out." (Tr. pp. 113-14).

On December 21, 2014, in the late afternoon, a witness called the police and reported that he observed a man, later identified as Kesterke, entering the site near the northwest corner of the fence where it was "leaning a little bit, but [not] open." (Tr. p. 95). The witness later testified that Kesterke, who had a

"newspaper carrying bag" with him, was sifting through the debris, removing metal pieces, and placing them into a pile. (Tr. p. 96). Officer Mitchell Gearhart of the City of Fort Wayne Police Department (Officer Gearhart) responded to the call. When the officer arrived, Kesterke "had his back turned to [the officer], and he was digging through the debris pile, and it appeared as though he was taking metal objects and tossing them off to the side into a pile." (Tr. pp. 126-27). Officer Gearhart observed two piles of metal, one inside the fenced area and one outside. Officer Gearhart called Kesterke and asked where he had entered the work site. Kesterke showed him the corner of the fence, and the officer asked Kesterke to meet him there. Officer Gearhart observed that the fence at the northwest corner "was not attached to the post and it was bent back and lying into the mud that was there at the facility." (Tr. p. 130). Kesterke informed the officer that he intended to collect "metal items" for "scrap" and that he "had not gotten any approval of any kind to be on the property." (Tr. p. 128). When asked about the pile located outside of the fence, Kesterke informed the officer that "those were items that he had tossed over, to then retrieve at a later point in time." (Tr. p. 138). Later, the police officers inspected Kesterke's bag and discovered bolt and wire cutters, screwdrivers, hammers, and other tools inside.

[6] On December 22, 2014, the State filed an Information charging Kesterke with Count I, criminal trespass, a Class A misdemeanor; and Count II, conversion, a Class A misdemeanor. In Count I, the State alleged that Kesterke "knowingly or intentionally interfere[d] with the possession or use of the property of 1903

St. Mary[']s Ave., to wit: entered the fully fenced[-]in property to scrap metal by entering in a hole in the fence which was not consented to by said [Gerald] Martin, Martin Construction." (Appellant's App. p. 11). In Count II, the State alleged that Kesterke "knowingly or intentionally exert[ed] unauthorized control over the property of Martin Construction[,] to wit: was attempting to scrap metal from a job site located at 1903 St. Mary[']s Ave. by entering fenced[-]in private property and throwing scrap metal over the fence to be collected later." (Appellant's App. p. 12).

[7] At a jury trial on September 24, 2015, the trial court reproduced the charging Information for the jury in both the preliminary and final instructions. Additionally, in both sets of instructions, the trial court separated and enumerated the elements of each crime. As to Count I, the trial court instructed the jury:

> Before you may convict the Defendant of Count I, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, [Kesterke],
> 2. [K]nowingly or intentionally[,]
> 3. [I]nterfered with the possession or use of the property of [Gerald] Martin, Martin Construction[,]
> 4. [W]ithout the consent of [Gerald] Martin, Martin Construction.

(Appellant's App. pp. 16, 32). As to Count II, the trial court instructed the jury:

> Before you may convict the Defendant of Count II, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant[, Kesterke],

2. [K]nowingly or intentionally[,]
3. [E]xerted unauthorized control[,]
4. [O]ver property of [Gerald] Martin, Martin Construction.

(Appellant's App. pp. 17, 31).

[8]  Following the jury trial, Kesterke was found guilty as charged. On the same day, the trial court sentenced Kesterke to a one-year, fully suspended sentence for his criminal trespass conviction and a $25 fine for his conversion conviction.

[9]  Kesterke now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10]  Kesterke argues that his convictions for criminal trespass and conversion violate Indiana's prohibition against double jeopardy under the actual evidence test. The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. A trial court's legal conclusion regarding whether convictions and sentences violate double jeopardy principles is reviewed *de novo*. *Singh v. State,* 40 N.E.3d 981, 986 (Ind. Ct. App. 2015), *trans. denied*. We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our supreme court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). In *Richardson,* our supreme court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original).

[11] Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish *all* of the essential elements of a second challenged offense. *Richardson,* 717 N.E.2d at 53.

> Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. The term "reasonable possibility" turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions.

*Bunch v. State,* 937 N.E.2d 839, 845-46 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied*.

[12] The State charged Kesterke with criminal trespass as follows: Kesterke "knowingly or intentionally interfere[d] with the possession or use of the property of 1903 St. Mary[']s Ave., to wit: entered the fully fenced[-]in property to scrap metal by entering in a hole in the fence which was not consented to by said [Gerald] Martin, Martin Construction." (Appellant's App. p. 11). The State also charged Kesterke with conversion as follows: Kesterke "knowingly or intentionally exert[ed] unauthorized control over the property of Martin Construction[,] to wit: was attempting to scrap metal from a job site located at 1903 St. Mary[']s Ave. by entering fenced[-]in private property and throwing scrap metal over the fence to be collected later." (Appellant's App. p. 12).

[13] Kesterke claims that the evidence used to establish his conviction for criminal trespass was the same as the evidence used to establish his conviction for conversion. We disagree. Our review of the record indicates that the criminal trespass charge was focused on Kesterke's manipulation and interference with Martin's fence. During the trial, the reporting witness testified that before Kesterke entered the work site, the fence was leaning slightly, but was not on the ground. After Kesterke entered the site, the police officer observed the fence to be detached from its post, bent back, and dropped into the mud. The police officers later discovered different tools in Kesterke's bag, such as bolt and wire cutters, screwdrivers, and hammers. Kesterke's conversion conviction, on the other hand, was focused on the unauthorized control exerted over the scrap metal, which was in Martin's legal possession pursuant to Martin's contract with the city. Kesterke was found sifting through the debris, sorting the metal out, and placing it into separate piles to retrieve later. Kesterke admitted that he had no permission to take the metal and that his explicit intent was to sell it for scrap.

[14] Further, the record reveals that the jury received proper preliminary and final instructions, which focused on different acts. Both sets of instructions separated each of the alleged crimes into distinct elements. The State and the trial court urged the jury to read the jury instructions for guidance on the elements of the charged crimes. Considering the evidence presented, we find no reasonable possibility that the evidence used to establish the essential elements of criminal trespass was used to establish *all* of the essential elements of conversion.

Accordingly, under the actual evidence test, Kesterke's convictions for criminal trespass and conversion are not the same offenses, and his convictions do not violate the double jeopardy clause of the Indiana Constitution.

## CONCLUSION

Based on the foregoing, we hold that Kesterke's convictions did not violate Indiana's double jeopardy clause.

Affirmed.

Kirsch, J. and Pyle, J. concur