## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 12 2016, 9:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lizbeth W. Pease
Nichols & Wallsmith
Knox, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven A. Garland,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 12, 2016

Court of Appeals Case No.
75A03-1510-CR-1772

Appeal from the Starke Circuit Court

The Honorable Kim Hall, Judge

Trial Court Cause No.
75C01-1408-F6-110

**Crone, Judge.**

## Case Summary

[1] A jury found Steven A. Garland guilty of level 6 felony strangulation, and the trial court sentenced him to thirty months of imprisonment. On appeal, Garland contends that the trial court abused its discretion in denying his motion for continuance; the evidence is insufficient to sustain his conviction; and the trial court abused its discretion at sentencing. Finding no abuse of discretion and the evidence sufficient, we affirm.

## Facts and Procedural History

[2] The facts most favorable to the jury's verdict are that Garland and M.N. dated approximately twenty years ago and broke up after eight months. They crossed paths again in 2013 and became intimate in April 2014. Garland spent the night at M.N.'s home in Knox ten or twelve times. In August 2014, M.N. went to Nashville, Tennessee, with some girlfriends for the weekend. Garland repeatedly texted and called M.N. while she was gone. M.N. either ignored or gave short responses to Garland's texts and calls. While M.N. was at a party, she "chose not to answer" her "constantly ringing" phone. Tr. at 40. Another woman at the party "thought it was funny," answered M.N.'s phone, and talked to Garland for "[a] minute or two." *Id*. at 40-41.

[3] The next day, as M.N. was on her way home, Garland sent her "six or seven" text messages asking her "to let him know when [she] got to Indianapolis." *Id*. M.N. responded to "three or four of them." *Id*. Garland texted her that he was going to have drinks with a friend and then go to the pub where M.N. worked.

When M.N. got home, she put on her pajamas, turned on a movie, and texted Garland that she was "home in bed, too tired for anything." *Id*. at 42-43. She texted him to ask where he was and received no response.

[4]     Later that evening, M.N. saw Garland's truck "come up [her] driveway[,]" and he "walk[ed] into [her] house and into [her] room and asked if [she] wanted to go for a drink." *Id*. at 43. M.N. replied that she was tired and did not want to go. Garland started to leave the house, then "came back and stood in the doorway and yelled at [her] about the girl answering the phone." *Id*. M.N. asked him what he was talking about because she "had forgotten the whole thing had even happened." *Id*. Garland jumped on her bed, pinned her down, pulled her head back, and "grabbed [her] lips with his teeth and shook his head and bit [her]." *Id*. M.N. said, "[W]ait, let's talk about this. I don't know what you're talking about." *Id*. at 44. Garland wrapped his hands around her neck and started squeezing. M.N. had trouble breathing and "just saw black and stars." *Id*. at 45.

[5]     M.N. managed to push Garland off her, "jumped out of [her] bed barefooted in [her] pajamas[,]" and "ran out of the house." *Id*. She "immediately dialed 911 because [her] phone was still in [her] hand." *Id*. M.N. ran to a nearby house, but no one answered the door, so she went to the next house. She looked back and saw Garland's truck "pulling out of [her] driveway[.]" *Id*. at 46. M.N. banged on the door, and her neighbor let her in. According to the neighbor, M.N. "was kind of in an excited state and said her ex-boyfriend had tried to choke her." *Id*. at 64. M.N. stayed there until the police arrived. She had "red

marks on [her] neck from fingers" and a "swollen and bitten" bottom lip. *Id*. at 50, 51. An officer took photos of her injuries.

[6] A deputy sheriff who talked with M.N. drove off to search for Garland. The deputy saw Garland's truck, pulled him over, and explained why he had been stopped. Garland "just blurted out" to the deputy, "I did choke her […], you know, she's into that." *Id*. at 85. He denied biting M.N. According to the deputy, Garland did not have any injuries and did not claim that M.N. had attacked him.

[7] Garland was arrested and charged with level 6 felony strangulation and class B misdemeanor battery. In September 2015, a jury trial was held at which both M.N. and Garland testified. The jury found Garland guilty as charged. The trial court entered judgment of conviction only on the strangulation conviction based on double jeopardy concerns and sentenced Garland to thirty months of imprisonment. This appeal followed. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in denying Garland's motion for continuance.

[8] On the morning of the scheduled trial date, the prosecutor informed the trial court that defense counsel had provided her with the names of two potential witnesses, one of whom was Steve Campbell. Defense counsel had told the prosecutor that he had not subpoenaed Campbell and had not been able to

contact him.  The prosecutor explained that on the previous afternoon, she had left a voicemail message with Campbell stating that she "wanted to talk to him about whether he was going to testify and what he was going to testify about." *Id*. at 8.  He did not return her call until approximately 8:45 a.m. on the morning of trial.  Campbell told the prosecutor that a man named Roger Hayes had told him that another man named Fred Podel had a "similar situation[]" with M.N. "that was in line with what the defense is saying what happened in this case, which is the choking was part of sexual play[.]" *Id*. at 7, 9.  Defense counsel moved for a continuance, presumably to contact Campbell, Podel, and/or Hayes.[1]  The trial court denied the motion.

[9]  Garland now contends that the trial court erred in denying his motion for continuance.  Rulings on nonstatutory motions for continuance lie within the trial court's discretion and will be reversed only for an abuse of that discretion and resultant prejudice.  *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000).  "An abuse of discretion occurs only where the trial court's decision is clearly against the logic and effect of the fact and circumstances before the court."  *Shoultz v. State*, 995 N.E.2d 647, 657 (Ind. Ct. App. 2013), *trans. denied*.

[10]  The gist of Garland's argument is that the trial court should have granted a continuance so that he "could contact the new witness [i.e., Podel] which would corroborate his contention [that] M.N. liked to be choked during sexual

---

[1] The transcription of defense counsel's request ends midsentence.  *See* Tr. at 7 ("I believe at this time I would move to continue the trial, Your Honor, based on the possibility").

relations[.]" Appellant's Br. at 6. He claims that the denial of a continuance "violated his right to present a defense." *Id.* The fatal flaw in this argument is that Garland did not testify that he engaged in sexual relations with M.N. after she returned from her weekend in Nashville. Rather, he suggested that any choking would have occurred in self-defense. *See* Tr. at 105-06 ("I took my shoes off and laid down beside her.[…] I kissed her and said, who was that Kim, that gal who had your phone. Then she just went off on me.[…] She backhanded me and she got on top of me, and all I done was just push in fear, just pushed her back."); *id.* at 106 ("Q. Is it possible that in an attempt to get her away from you, you grabbed her some place? A. Yes.").[2] And because Garland did not testify that he choked M.N. during sexual relations that evening, any third-party testimony regarding M.N.'s sexual predilections would have been irrelevant and therefore inadmissible. *See* Ind. Evidence Rule 402 ("Irrelevant evidence is not admissible."). In sum, Garland has failed to establish that he was prejudiced by the trial court's ruling. Under these

---

[2] Garland does not assert that he was forced to abandon or alter his defense because of the trial court's denial of his motion for continuance. Nor does he assert that M.N.'s injuries were inflicted on another date or by another person.

circumstances, we cannot conclude that the trial court abused its discretion in denying Garland's motion for continuance.[3]

## Section 2 – Sufficient evidence supports Garland's conviction for strangulation.

Garland claims that the State failed to present sufficient evidence to sustain his conviction. His argument is twofold: (1) the State failed to establish that he committed the crime; and (2) the State failed to disprove his self-defense claim. Our supreme court has explained,

> When conducting a sufficiency of the evidence review after a jury verdict, the appellate posture is markedly deferential to the outcome below: we will neither reweigh the evidence nor re-examine witness credibility, and we must consider only the probative evidence and reasonable inferences supporting the verdict. Indeed, it is our duty to affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (citations and quotation marks omitted).

---

[3] In his reply brief, Garland argues that securing Campbell's testimony would have allowed him "to present evidence of M.N.'s appearance on the day following this incident as well as a conversation between herself and Steve Campbell." Reply Br. at 3. We note that "[a]ppellants are not permitted to raise new arguments in their reply briefs." *Cobbs v. State*, 987 N.E.2d 186, 191 n.1 (Ind. Ct. App. 2013). Consequently, this argument is waived. *Id*. In any event, it is unclear whether Campbell's statements about what M.N. allegedly told him would be admissible under Indiana's hearsay rules. *See* Ind. Evidence Rules 801 (defining hearsay as a statement that is not made by the declarant while testifying at trial and is offered in evidence to prove the truth of the matter asserted) and 802 (providing that hearsay is not admissible unless the Evidence Rules or other law provides otherwise).

[12] A person commits strangulation when, in a rude, angry, or insolent manner, he knowingly or intentionally applies pressure to the throat or neck of another person in a manner that impedes the other person's normal breathing or blood circulation. Ind. Code § 35-42-2-9(b). Garland argues that he "did not choke M.N. in a rude, angry or insolent manner. As he testified, any choking was done during sexual play, as M.N. liked it rough." Appellant's Br. at 7. Garland told the deputy who arrested him that M.N. "liked it rough," but he did not tell the jury that he choked M.N. during sexual relations. Regardless, this argument is merely a request to reweigh evidence and examine witness credibility, which we will not do.

[13] As for Garland's self-defense claim, we note that whether the State has disproved such a claim is a question of fact for the jury. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999).

> Thus, it is reviewed as any other sufficiency question. We will neither weigh the evidence nor judge the credibility of the witnesses but rather, will look to the evidence most favorable to the State together with all reasonable inferences therefrom; if there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt, the verdict will not be disturbed.

*Bowling v. State*, 493 N.E.2d 783, 785 (Ind. 1986) (citation omitted). The State may meet its burden to disprove a self-defense claim beyond a reasonable doubt "by rebutting the defense directly, by affirmatively showing the defendant did

not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller*, 720 N.E.2d at 700.

[14] Garland claims that "[a]ny injuries or choking sensations were the result of self-defense on [his] part." Appellant's Br. at 8. The jury heard Garland's testimony and chose to believe M.N.'s testimony that Garland attacked her. We may not second-guess that credibility determination on appeal. Self-defense is unavailable to a defendant who is the initial aggressor except in circumstances not present here. *Miller*, 720 N.E.2d at 700; Ind. Code § 35-41-3-2. Consequently, we affirm Garland's conviction.

## Section 3 – The trial court did not abuse its discretion at sentencing.

[15] In its written sentencing order, the trial court found five aggravating factors: (1) Garland's criminal history, including six prior felony convictions; (2) he was on probation for a felony conviction when he strangled M.N.; (3) he failed to take responsibility for his actions and blamed M.N. and the jury for his predicament; (4) he denied having problems with alcohol despite his prior convictions for operating while intoxicated; and (5) he denied any mental health disorder or illness despite having been found incompetent and committed to the Indiana Department of Mental Health in a previous criminal case.[4] The court found

---

[4] According to the presentence investigation report, the case involved charges of class B felony burglary, class B felony criminal confinement, and class D felony pointing a firearm. Confidential App. at 49, 54. Pursuant to a plea agreement, Garland pled guilty but mentally ill to class B felony burglary, the remaining charges were dismissed, and he was sentenced to ten years executed. *Id*. at 49.

two mitigating factors: (1) imprisonment will result in hardship to Garland's elderly father; and (2) Garland had no reported violations of his lengthy pretrial release. The court found that the aggravating factors outweighed the mitigating factors and sentenced Garland to thirty months of imprisonment.[5]

[16] Garland contends that "[t]he trial court abused [its] discretion when it failed to give mitigating weight to [his] mental illness. It enhance[d] the abuse when it gave aggravating weight to what was perceived as a denial of the mental illness, rather than a lack of understanding." Appellant's Br. at 9.[6] Generally, sentencing decisions are left to the sound discretion of the trial court, and we review its decision only for an abuse of that discretion. *Singh v. State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied* (2016). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court." *Id*. A trial court may abuse its discretion by entering a sentencing statement that explains reasons for imposing the sentence that are not supported by the record or that omits reasons that are clearly supported by the record. *Id*.

---

[5] In August 2014, when Garland committed the crime, the sentencing range for a level 6 felony was six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b).

[6] Garland also mentions Indiana Appellate Rule 7(B), which provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Inappropriate sentence and abuse of discretion claims are to be analyzed separately, *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008), and Garland offers no separate inappropriateness argument.

As for Garland's contention that the trial court abused its discretion in failing to find his mental illness to be a mitigating circumstance, we note that he did not raise this proposed mitigator at the sentencing hearing and therefore is precluded from advancing it for the first time on appeal. *Pennington v. State*, 821 N.E.2d 899, 906 (Ind. Ct. App. 2005). And as for his claim that his denial of mental illness was actually a lack of understanding, the trial court was in the best position to judge Garland's comprehension of and truthfulness regarding the issue, and we will not revisit that determination. *See Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (acknowledging a trial court's "superior position" to "assess credibility and character through both factual testimony and intuitive discernment" via "direct interactions with the parties face-to-face"). We find no abuse of discretion here. Therefore, we affirm Garland's sentence.

Affirmed.

Kirsch, J., and May, J., concur.