# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2017, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randy M. Fisher
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Lamontae J. White,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 23, 2017

Court of Appeals Case No.
02A05-1702-CR-304

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1603-F4-21

**Najam, Judge.**

# Statement of the Case

Lamontae White appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, following a jury trial. White presents the following issues for our review:

1. Whether the State presented sufficient evidence to support his conviction.

2. Whether the trial court abused its discretion when it sentenced him.

3. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts and Procedural History

On January 7, 2016, at approximately 9:00 p.m., Timothy Swift was driving his grandmother's car in Fort Wayne, with his brother Timon Swift sitting in the front passenger seat and White sitting in the back seat behind Timothy. Fort Wayne Police Department ("FWPD") Detective David Wilkins initiated a traffic stop when he saw that the car's license plate had expired. As Detective Wilkins approached the driver's side of the car, FWPD Officer Matthew Foote arrived at the scene and approached the passenger's side of the car. The occupants identified themselves, and Timothy told the officers that his driver's license was suspended. The officers then instructed all three men to exit the car, and the officers conducted pat-down searches of the men.

[3]     Because Timon's driver's license was suspended and the car's license plate had expired, the officers conducted an inventory search of the car in preparation to have it towed. During the search, Detective Wilkins found a baggie containing what appeared to be marijuana between the front passenger seat and the middle console. Detective Wilkins also found a silver Ruger handgun on top of a red notebook on the floor under the "rear portion of the front passenger's seat." Tr. at 32. The slide on the handgun was in the forward position, "covering the barrel." *Id.* at 33. Officers also found clothing and shoes in the backseat. White initially denied that the clothing and shoes belonged to him, but he later admitted that they were his. In addition, officers observed that there was a drawer underneath the front passenger seat that obstructed access to the rear of the floor of the seat. And officers found a large piece of Styrofoam wedged behind the driver's seat area that obstructed the driver from accessing the back seat area of the car. The officers placed all three men in handcuffs and transported them to the police station. The men denied any knowledge of the handgun found in the car.

[4]     On January 13, Timothy went to the police station and told Officer Foote that the handgun belonged to him. However, after a latent fingerprint examiner with the FWPD found White's partial palm print on the barrel of the Luger handgun, on March 4, the State charged White with unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and carrying a handgun without a license, as a Level 5 felony. The State dismissed the Level 5 felony charge prior to trial, and a jury found White guilty of the remaining charge.

The trial court entered judgment of conviction and sentenced White to twelve years executed. This appeal ensued.

## Discussion and Decision

### Issue One: Sufficiency of the Evidence

White first contends that the State failed to present sufficient evidence to support his conviction. Our standard of review on a claim of insufficient evidence is well-established:

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). We likewise consider conflicting evidence in the light most favorable to the trial court's finding. *Wright v. State*, 828 N.E.2d 904 (Ind. 2005). It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Drane*, 867 N.E.2d at 147. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000).

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011) (footnote omitted).

To convict White of unlawful possession of a firearm by a serious violent felon, a Level 4 felony, the State was required to show that he, a serious violent felon, knowingly or intentionally possessed a firearm. Ind. Code § 35-47-4-5 (2015). White's sole contention on appeal is that the evidence is insufficient to prove that he possessed a firearm. We cannot agree.

[7]    Possession can be actual or constructive.  A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it.  *Id.*  There is no question that White had the capability to maintain dominion and control over the firearm inside the car, as it was within his reach.  *Holmes v. State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003).  Thus, we turn to whether a reasonable fact-finder could conclude on these facts that White had the intent to possess that contraband.

[8]    For such issues, our ultimate question is "whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband."  *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016).  We have previously enumerated several nonexhaustive facts that the fact-finder might consider where, as here, a defendant's possession of the premises in which the contraband is found is not exclusive:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Wilkerson v. State*, 918 N.E.2d 458, 462 (Ind. Ct. App. 2009).

[9]    We agree with the State that a reasonable fact-finder could have concluded that White knew of the nature and presence of the firearm under the front passenger seat of the car.  First, White's partial palm print was found on the barrel of the

gun, which was covered by the slide when officers found the gun under the seat. Second, the front seat passenger could not readily access the location where the gun was found because there was a fixed drawer under the seat between the front and back of the floor underneath the seat. Third, the driver could not readily access the location where the gun was found because there was a large piece of Styrofoam blocking the driver's access to the back seat area of the car. Fourth, White was sitting in the back seat and had easy access to the area underneath the front passenger seat. Fifth, White's clothing and shoes were found in the back seat near the gun. Sixth, White made an incriminating statement when he initially denied that the clothing and shoes were his but later admitted that they belonged to him. And seventh, while Timothy testified that he had thrown the gun into the back seat after he saw the officers following the car,[1] the officers testified that they did not see anyone throw anything into the back seat. We conclude that the State presented sufficient evidence from which a reasonable fact-finder could conclude that White constructively possessed the handgun.

### Issue Two: Abuse of Discretion in Sentencing

[10] White also contends that the trial court abused its discretion when it sentenced him. Generally, sentencing decisions are left to the sound discretion of the trial court, and we review its decision only for an abuse of that discretion. *Singh v.*

---

[1] The officers found the gun neatly placed on top of the red notebook, which indicates that it had not been thrown there but had been placed there.

*State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied*. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court." *Id.*

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007) ("*Anglemyer I*") (internal quotation marks and citations omitted), *clarified on reh'g*, 875 N.E.2d 218 ("*Anglemyer II*").

[11]  White maintains that the trial court abused its discretion when it did not consider his bad childhood and current family support as mitigators. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer I*, 868 N.E.2d at 493. Further, "'[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain

why it has found that the factor does not exist.'" *Id.* (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

[12] Here, White has not demonstrated either that the proffered mitigators are significant or that they are clearly supported by the record. With regard to his bad childhood, White directs us to his mother's statement at sentencing where she briefly mentioned that White's father was verbally and physically abusive and that she raised White and his siblings in "house-to-house situations" that "tarnished [White] a lot." Tr. at 156. With regard to his current family support, White directs us to his defense counsel's statement to the trial court at sentencing that there were "a number of friends and family members" in the courtroom. *Id.* at 155. White does not cite to any evidence that he has support from friends and family outside of the courtroom. White has not demonstrated that the trial court abused its discretion when it did not find his bad childhood and family support to be mitigating circumstances.

### Issue Three: Appellate Rule 7(B)

[13] Finally, White contends that his sentence is inappropriate in light of the nature of the offense and his character. As we have explained:

> Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct.

App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

*Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

[14] White asserts that the nature of the offense "is certainly not the most egregious seen by this Court." Appellant's Br. at 22. He maintains that he was arrested after a "simple traffic stop" and he had not attempted to use the handgun "in any sort of violent manner" at the time. *Id.* at 22-23. But the State points out that White possessed the fully loaded handgun while he was "still on supervised release" for a federal conviction for unlawfully possessing a firearm. Appellee's Br. at 14. We cannot say that White's twelve-year sentence is inappropriate in light of the nature of the offense.

[15] White also maintains that his sentence is inappropriate in light of his character. White acknowledges that his juvenile and adult criminal histories are "significant." Appellant's Br. at 23. Still, he asserts that most of his juvenile adjudications and two of his six adult convictions were for non-violent offenses. And White contends that his "character can be gleaned from his correspondence to the trial court, as well as the two character witnesses [who] testified on his behalf at the sentencing hearing." *Id.* However, not only is White's criminal history significant, but this is his *third* conviction related to the illegal possession of a firearm. Again, he was on supervised release for a federal

firearm possession conviction at the time of the instant offense. We cannot say that Smith's sentence is inappropriate in light of his character.

[16] Affirmed.

Riley, J., and Bradford, J., concur.